383 S.E.2d 786

**Biddie THOMAS, d/b/a Thomas Septic Service**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY.**

No. 18248.

Supreme Court of Appeals of West Virginia.

July 12, 1989.

Ben B. White, III Princeton, for State Farm Mut. Auto. Ins. Co.

John P. Anderson, Princeton, for Biddie Thomas.

MILLER, Justice:

This is an appeal from a final order of the Circuit Court of Mercer County, entered April 21, 1987, which denied a motion to set aside a jury verdict in favor of the plaintiff below, Biddie Thomas, for property damage and economic loss resulting from an automobile accident involving a truck used in the plaintiff's business. The defendant, State Farm Mutual Automobile Insurance Company (State Farm), contends that the circuit court erred in allowing the plaintiff to recover consequential damages and in awarding her attorney's fees. We find no error warranting reversal of the circuit court's judgment, and we affirm.

The plaintiff operates a small business under the name of Thomas Septic Service. On June 18, 1986, a truck used in the business was damaged in a collision with a vehicle driven by Joseph Hamer in Mercer County. Both vehicles were insured by State Farm.

The plaintiff's husband, Ralph Thomas, notified State Farm that the truck had been towed to Andy Clark Ford, Inc., the local dealership from which the plaintiff had purchased the truck some six months earlier. Mr. Thomas requested an immediate appraisal of the damage to the vehicle, asserting that delay in effecting repairs would have an adverse effect on the plaintiff's business.

Because State Farm's full-time appraiser, Ferlin Basham, was unavailable at the time, the claims representative, Ivan Daniel Adams, authorized Andy Clark Ford to estimate the cost of repairing the truck.

The Clark Ford estimate, dated June 27, 1986, placed the cost of repairing the truck at $8,200.05. This estimate included the cost of replacing the cab and frame of the truck. It did not include the cost of repairs to a customized tank and pump apparatus that had been installed on the truck by the plaintiff for use in the business. The plaintiff separately supplied State Farm with an estimate for these repairs, prepared by the company that installed the tank and pump apparatus, in the amount of $1,560. Additionally, an estimate was submitted for the cost of painting and relettering the truck in the amount of $471.

Mr. Basham subsequently inspected the plaintiff's vehicle at the request of State Farm and estimated the cost of repairs to the truck at $4,960.72. The principal reason for the lower estimate was Mr. Basham's determination that the vehicle's cab and frame could be repaired and, therefore, did not need to be replaced. The Basham estimate did not take into consideration the cost of repairing the tank and pump apparatus or of painting and relettering the vehicle.

By letter dated July 18, 1986, Mr. Adams, the State Farm representative, advised the plaintiff of the Basham estimate and offered to settle the property damage claim for that amount under the plaintiff's collision coverage. The plaintiff refused these offers of settlement and advised State Farm that she was hiring an attorney to represent her.

In September, 1986, the plaintiff filed suit in the Circuit Court of Mercer County, alleging that State Farm had refused to provide full coverage of her loss under the terms of her insurance policy. The plaintiff sought compensatory damages in the amount of $10,465.50 for property damage to the truck and $359.00 for towing charges, as well as any hidden damage revealed in the course of repairs. In addition, the plaintiff alleged that State Farm had intentionally delayed settling the claim and sought punitive damages, consequential damages for economic loss, inconvenience and annoyance resulting from the loss of use of the vehicle, and attorney's fees pursuant to this Court's decision in *Hayseeds, Inc. v. State Farm Fire & Casualty Co.*, 177 W.Va. 323, 352 S.E.2d 73 (1986).[1]

Trial commenced before a jury on March 26, 1987, and resulted in a verdict in favor of the plaintiff in the amount of $13,213, representing an award of $10,168 for property damage and towing and storage fees, and an award of $3,045 for economic loss. By order dated April 8, 1987, the circuit court found that the plaintiff had substantially prevailed and was, therefore, entitled to attorney's fees equal to one-third of the verdict, or $4,404.30.[2] The court entered judgment for the plaintiff, plus 10 percent interest from the date of the order.

State Farm subsequently filed motions to amend its answer, to alter or amend the judgment, and to set aside the judgment. These motions were denied by order of the circuit court dated April 21, 1987.

Thereafter, the parties reached an agreement whereby State Farm would pay to the plaintiff the sum of $11,283.73, representing the jury's verdict for property damage to the truck and towing and storage fees, plus interest from the date of the accident. By order dated July 27, 1987, the circuit court ratified this agreement, leaving only a dispute as to the plaintiff's entitlement to consequential damages and attorney's fees under *Hayseeds* for resolution by this Court on appeal.

In *Hayseeds, Inc. v. State Farm Fire & Casualty Co.*, *supra*, the holders of a fire loss policy sued their insurance company to recover the value of a building that had been destroyed by arson.[3] The insurance company had refused to pay the property damage claim on the basis of circumstantial evidence implicating the plaintiffs in the crime. The plaintiffs testified, however, that they had not been involved in the arson and asserted that the insurer had failed to make a good faith investigation of the facts surrounding it.

In *Hayseeds*, we initially determined that there was sufficient evidence of record from which the jury could find that the plaintiffs were not at fault in the arson, and we affirmed the verdict in favor of the plaintiffs for property damage under the insurance policy. We then addressed in Syllabus Point 1 the plaintiffs' entitlement to consequential damages above the amount due under the insurance contract:

> "Whenever a policyholder substantially prevails in a property damage suit against its insurer, the insurer is liable for: (1) the insured's reasonable attorneys' fees in vindicating its claim; (2) the insured's damages for net economic loss caused by the delay in settlement, and damages for aggravation and inconvenience."

State Farm first contends that *Hayseeds* applies only where an insurer refuses to make any payment under the insurance policy, focusing solely on language in the

---

1. Suit was initially filed prior to our decision in *Hayseeds*, but the plaintiff subsequently amended her complaint to include the causes of action and types of damages discussed therein. The plaintiff's claim for punitive damages was later dismissed by the trial court in accordance with principles we enunciated in *Hayseeds* and recently expounded upon in *Berry v. Nationwide Mut. Fire Ins. Co.*, 181 W.Va. 168, 381 S.E.2d 367 (1989).

2. The one-third attorney's fee award was apparently set in accordance with the language from *Hayseeds* to the effect that "the standard contingent fee is 33 percent." 177 W.Va. at 330, 352 S.E.2d at 80.

3. A suit filed by the insured against his or her own insurance company for failure to comply with its policy is sometimes termed a "first-party suit."

opinion concerning an insurer who "wrongfully withholds or unreasonably delays payment of an insured's claim." 177 W.Va. at 330, 352 S.E.2d at 80. State Farm contends that since it made an offer to settle the plaintiff's claim prior to trial, *Hayseeds* is inapposite. We believe State Farm misperceives the teaching of *Hayseeds*.

The critical language in *Hayseeds* refers to "a policyholder [who] substantially prevails in a property damage suit against its insurer." Syllabus Point 1, in part. In property damage claims, the loss is tangible and the amount of damages is ordinarily readily susceptible to calculation. *See Checker Leasing, Inc. v. Sorbello*, 181 W.Va. 199, 382 S.E.2d 36 (1989). Because a property damage claim is fixed and calculable, there is little danger that the insurer will be exposed to excessive damages. This can give rise to the temptation to place as low a value as possible on the claim in the hope that the insured will settle at the low figure rather than fight. Courts have recognized that this type of conduct on the part of the insurer is actionable under a bad faith theory.[4] *E.g., Hartford Fire Ins. Co. v. Rowland*, 181 Ga.App. 213, 351 S.E.2d 650 (1986). *See generally* S. Ashley, *Bad Faith Actions* §§ 5:12 & 5:13 (1989).

In the case at bar, State Farm contended that the plaintiff had refused to accept any settlement of the claim under her collision insurance. In support of this theory, State Farm offered the testimony of Mr. Adams, the claims representative. Mr. Adams testified that he believed the plaintiff was demanding payment under the other driver's liability policy, which was also issued by State Farm. However, this dispute over which policy would provide coverage seems more theoretical than real. There can be no question that within two months from the date of the accident, suit was filed against State Farm. This unmistakably advised State Farm that the plaintiff was seeking to recover under her collision coverage.

Moreover, the bulk of the evidence clearly indicates that this litigation arose not from the plaintiff's refusal to accept payment under the collision policy, but, rather, from her rejection of a settlement offer which did not adequately cover the actual property damage to the vehicle. The policy reasons advanced in *Hayseeds*, where no offer of payment was made, are equally applicable here. "In either case, the insured is out his consequential damages and attorney's fees. To impose upon the insured the cost of compelling his insurer to honor its contractual obligation is effectively to deny him the benefit of his bargain." *Hayseeds*, 177 W.Va. at 329, 352 S.E.2d at 79–80.

State Farm also contends that the trial court erred in not allowing the jury to consider interrogatories which related to its theory. Interrogatory No. 2 asked the jury to consider whether the plaintiff had "refused to allow the Defendant to make any payment under the Plaintiff's own collision insurance." An amended interrogatory, designed to clarify the jury's affirmative answer to Interrogatory No. 2, asked whether the jury had meant to find that "the Plaintiff refused to negotiate settlement of the claim under her collision coverage."

As we have already indicated, we believe these interrogatories were based on an incorrect perception of the evidence. The critical point, which was addressed not by

---

4. In *Hayseeds*, we announced what we termed a "bright line" rule with regard to incidental damages in first-party property damage claims in place of such subjective concepts as "bad faith" or "wrongful" conduct:

"Unfortunately, awards of consequential damages currently turn on judicial interpretation of such malleable and easily manipulated concepts as 'reasonable,' 'unreasonable,' 'wrongful,' 'good faith' and 'bad faith.' We believe that the interests of both the parties and the judicial system would be better served by the enunciation of a clear, bright line standard governing the availability of consequential damages in property damages insurance cases. Accordingly, we hold today that when a policyholder substantially prevails in a property damage suit against an insurer, the policyholder is entitled to damages for net economic loss caused by the delay in settlement, as well as an award for aggravation and inconvenience." 177 W.Va. at 330, 352 S.E.2d at 80.

the interrogatories, but by the trial court's instructions to the jury, was that an insured who has submitted a reasonable estimate of property damages is not required to accept a substantially lower estimate of damages from the insurer. *See Commercial Union Assurance Companies v. Safeway Stores, Inc.*, 26 Cal.3d 912, 164 Cal. Rptr. 709, 610 P.2d 1038 (1980); *Auto–Owners Ins. Co. v. Green*, 220 So.2d 29 (Fla.App.1969); *Firemen's Ins. Co. of Newark v. Allmond*, 105 Ga.App. 763, 125 S.E.2d 545 (1962). We find State Farm's argument to be spurious in light of the facts and its unreasonably low offer.

Nor can we accept State Farm's argument that Interrogatory No. 2, as submitted, was designed to establish a theory of mitigation of damages. The concept of mitigation of damages is usually confined to the obligation of the injured party not to enhance the damages by failing to take reasonable steps to protect the property. *See Hardman Trucking, Inc. v. Poling Trucking Co., Inc.*, 176 W.Va. 575, 346 S.E.2d 551 (1986). Here, there was no evidence that the property deteriorated in value as a result of the neglect of the plaintiff.

Moreover, as we pointed out *Hayseeds*, the entire purpose of obtaining property insurance is to provide a source of funds to repair or replace the property. When the insurer refuses to make a reasonable settlement offer, it can hardly claim that the insured's refusal to settle violates mitigation concepts.

■ Finally, State Farm contends that the plaintiff did not substantially prevail on her claim within the meaning of *Hayseeds*. The term "substantially prevail" necessarily refers to a verdict in favor of the insured on the underlying property damage claim. If the jury finds that the insurer has a good defense to the claim and returns a verdict for the insurer, the insured does not prevail and the word "substantial" is

meaningless. It is only when the insured prevails, i.e., obtains a verdict, that the word "substantial" becomes meaningful to determine whether the insured is entitled to the damages authorized in *Hayseeds* for the insurer's failure to honor its contract. These are "(1) the insured's reasonable attorneys' fees in vindicating its claim; (2) the insured's damages for net economic loss caused by the delay in settlement, and [(3)] damages for aggravation and inconvenience." Syllabus Point 1, in part.

Here, State Farm's argument is based on the size of the jury's award for property damage, towing, and storage. State Farm argues that the $10,168 award is considerably less than the highest estimates offered by the plaintiff at trial.[5] Accordingly, State Farm argues that the plaintiff was not entitled to consequential damages.

We disagree with State Farm's analysis. The phrase "substantially prevails" relates to the status of the property damage claim at the time the negotiations broke down. The entire thrust of *Hayseeds* is summarized in this statement: "[W]hen an insured purchases a contract of insurance, he buys insurance—not a lot of vexatious, time-consuming, expensive litigation with his insurer." 177 W.Va. at 329, 352 S.E.2d at 79. Where the insurer has no defense to the contract coverage, it is expected to deal fairly and promptly with the insured to pay off the property damage loss. The purpose of the *Hayseeds* rule was to obtain this result and to avoid thrusting on the insured the burden of hiring an attorney and litigating against his own insurer.

■ Thus, we conclude that the question of whether the insured has substantially prevailed against his insurance company on a property damage claim is determined by the status of the negotiations between the insured and the insurer prior to the institution of the lawsuit. Where the insurance company has offered an amount materially below the damage estimates submitted by

---

**5.** In addition to the Clark Ford estimate, the plaintiff at trial submitted two other estimates for the cost of repairs to the body of the truck in the amount of $12,476.97 and $12,435.72. These estimates did not include the cost of repairs to the tank and pump apparatus and of painting and relettering the truck, which, as noted earlier, were set at $1,560 and $471, respectively.

the insured, and the jury awards the insured an amount approximating the insured's damage estimates, the insured has substantially prevailed.

 Here, the jury's award for property damage was $10,168. The plaintiff's damage estimates prior to trial were $8,200.05 for truck repairs and $1,560 for repairs to the tank and pump apparatus, plus $471 for painting and relettering of the truck, making a total of $10,231.05. In contrast, State Farm's offer of $4,960.72 represented only one-half of the jury award.[6] Clearly, the plaintiff substantially prevailed on its pretrial estimates.

For the foregoing reasons, the judgment of the Circuit Court of Mercer County is affirmed.

Affirmed.

McGRAW, J., participated and concurred in this decision, but departed from the Court prior to the preparation of the opinion.

WORKMAN, J., did not participate in the consideration or decision of this case.

---

**6.** Even if we were to assume that State Farm had intended to include the repairs to the tank and pump apparatus and the painting and relettering, which is not at all clear from the record, the additional $2,031 in damages would still render its offer substantially lower than the actual loss sustained by the plaintiff.