432 S.E.2d 802

**Marjorie POSTLETHWAIT and Dale Postlethwait, Plaintiffs Below, Appellants,**

v.

**BOSTON OLD COLONY INSURANCE COMPANY, a Wholly Owned Subsidiary of Continental Insurance Company and James W. Nowlan, Defendants Below, Appellees.**

**No. 21347.**

Supreme Court of Appeals of West Virginia.

Submitted May 4, 1993.

Decided June 28, 1993.

---

W. Dean DeLaMater, DeLaMater, Magg & Bohach, Weirton, for plaintiffs.

Michael L. Solomon, Solomon & Solomon, Morgantown, for defendants.

MILLER, Justice:

In this appeal, we are asked to determine whether under our uninsured motorist statute, W.Va.Code, 33-6-31(d) (1988), an insured may sue his insurance carrier without obtaining a formal judgment against the tortfeasor.

The facts are not in substantial dispute. On April 15, 1989, the Postlethwaits were involved in an automobile accident in Maryland. The accident was caused by the negligence of a Mr. Nowlan. The Postlethwaits negotiated a settlement with Mr. Nowlan's insurance carrier, Liberty Mutual Insurance Company, for the full amount of Mr. Nowlan's liability policy. Prior to actually consummating the settlement, the Postlethwaits advised their insurance carrier, Boston Old Colony (Boston) of the proposed settlement and Boston agreed to waive its subrogation rights against Mr. Nowlan.

After consummating the settlement with Liberty Mutual Insurance Company, the Postlethwaits, residents of Wetzel County, brought suit against Mr. Nowlan [1] and Boston in the Circuit Court of Wetzel County. Boston was qualified to do business in this State, and, thus, was subject to the court's jurisdiction. Its underinsured policy on behalf of the Postlethwaits was for the amount of $500,000. Service of process could not be obtained on Mr. Nowlan because he was a resident of Massachusetts. Boston filed a motion to dismiss claiming that it could not be sued because no judgment was obtained by the Postlethwaits against Mr. Nowlan. It was asserted that such a judgment was a necessary precondition to an underinsured motorist suit under W.Va.Code, 33-6-31(d), and our case of *Davis v. Robertson*, 175 W.Va. 364, 332 S.E.2d 819 (1985). The trial court agreed; however, since affidavits had been filed,

the trial court converted the motion to dismiss to a motion for summary judgment. Judgment was entered in favor of Boston, and the Postlethwaits appeal.[2]

The trial court concluded that W.Va. Code, 33-6-31(d), as interpreted by this Court in *Davis v. Robertson, supra,* required a judgment against Mr. Nowlan before suit could be filed against Boston for underinsured motorist coverage. Syllabus Point 2 of *Davis* states:

"W.Va.Code, 33-6-31, our uninsured motorist statute, does not authorize a direct action against the insurance company providing uninsured motorist coverage until a judgment has been obtained against the uninsured motorist."

In *Davis*, we dealt with a known uninsured motorist and a co-tortfeasor who had coverage. The plaintiff was a passenger in a car driven by her husband when the car collided with a vehicle driven by Mr. Robertson. She sued both drivers. The plaintiff's husband was insured by State Farm and his policy contained uninsured motorist coverage; Mr. Robertson, however, had no insurance. A State Farm agent advised Mr. Robertson that if he did not defend himself at trial, State Farm would pursue a subrogation claim against him in the event it received an adverse verdict. The plaintiff then sought to join State Farm as an additional party defendant.

In *Davis*, the trial court certified two questions to this Court. The first question dealt with the right to join a defendant's liability carrier in a tort action.[3] It is clear that this question solely referred to the liability side of the claim. Citing our prior law, we held in Syllabus Point 1 of *Davis* that a defendant's liability carrier in a tort action could not be so joined:

---

**1.** In their release, the Postlethwaits reserved the right to sue Mr. Nowlan, but agreed not to collect any verdict against him as a result of the suit on underinsured motorist coverage.

**2.** Initially, we note that the parties disagree over the choice of law question. The Postlethwaits contend that because the accident happened in Maryland, then the Maryland underinsured motorist law should apply. We decline to address

this issue because it was not addressed by the trial court. *See* Syllabus Point 8, *Charlton v. Charlton,* 186 W.Va. 670, 413 S.E.2d 911 (1991).

**3.** The first certified question in *Davis,* 175 W.Va. at 365, 332 S.E.2d at 820, stated: "'Is a liability insurance carrier who insures a defendant in a civil action a real party in interest and an indispensable party in a civil action and properly includable as a defendant in a civil action?'"

"An injured plaintiff may not join the defendant's insurance carrier in a suit for damages filed against the defendant arising from a motor vehicle accident, unless the insurance policy or a statute authorizes such direct action."

The second certified question in *Davis* involved whether the insurance carrier providing the uninsured motorist coverage could be joined in the same suit as against the uninsured tortfeasor.[4] It is this question that gave rise to our Syllabus Point 2 quoted above.

There are key factual distinctions between *Davis* and the present case. First, in *Davis*, the tortfeasor was sued initially to establish liability and to recover the plaintiff's damages. Here, the tortfeasor, through his liability carrier, paid the Postlethwaits the full amount of the liability policy. Moreover, the underinsured motorist carrier, Boston, waived its right to subrogation. The two cases are dissimilar factually.

■ W.Va.Code, 33–6–31(d), which we found to be controlling in *Davis*, outlines certain rights of an uninsured/underinsured insurance carrier where a tortfeasor who is uninsured or underinsured is sued by a plaintiff. It requires that a copy of the complaint be served upon the insurance carrier. It also allows the carrier "the right to file pleadings and to take other action allowable by law in the name of the owner, or operator, or both, of the uninsured or underinsured vehicle or in its own name."

■ The purpose of W.Va.Code, 33–6–31(d), is to protect an uninsured/underinsured insurance carrier from having a judgment entered against the uninsured/underinsured tortfeasor without the carrier having an opportunity to defend the suit. This protection is afforded in recognition of the fact that it is the uninsured/underinsured carrier which will be responsible for all or part of the judgment.

Syllabus Point 2 of *Davis, supra,* referred generally to W.Va.Code, 33–6–31. However, it is clear from the opinion that only W.Va.Code, 33–6–31(d), was at issue therein because the suit was instituted against the uninsured tortfeasor, Mr. Robertson. Within the confines of subsection (d), the uninsured/underinsured carrier could not be sued until after the judgment was obtained against the uninsured tortfeasor.

■ Syllabus Point 2 of *Davis* would have been more accurate if it had cited W.Va.Code, 33–6–31(d), along with its syllabus phrase "our uninsured motorist statute." From a textual standpoint, W.Va. Code, 33–6–31, covers a variety of subjects relating to automobile insurance policies issued in this State. It is not limited to uninsured and underinsured coverage. Therefore, to clear up any confusion concerning Syllabus Point 2 of *Davis*, we amend it to refer to its proper subsection, i.e., 31(d):

"W.Va.Code, [33–6–31(d) (1988)], our uninsured motorist statute, does not authorize a direct action against the insurance company providing uninsured motorist coverage until a judgment has been obtained against the uninsured motorist."

■ It is well to emphasize again that W.Va.Code, 33–6–31(d), deals only with the situation where the plaintiff has sued the uninsured/underinsured tortfeasor. We have not found any provision in the uninsured/underinsured section of W.Va.Code, 33–6–31, that contains a procedure for suing an uninsured/underinsured carrier where a settlement was made with the tortfeasor's liability carrier for the full amount of the policy limits, as is the issue in this case. Moreover, this case includes the additional fact that the uninsured/underinsured carrier waived its right of subrogation against the settling tortfeasor. Although the parties do not discuss the origin of this right of subrogation, we note

---

**4.** The second certified question in *Davis,* 175 W.Va. at 365, 332 S.E.2d at 820, was: "'When an uninsured motorist is made a defendant in a civil action and is covered by liability insurance under another motorist's insurance policy for his neglect, may this insurance carrier be made a party defendant to the action as an indispensable party or real party in interest?'"

that it arises by virtue of W.Va.Code, 33–6–31(f), which authorizes a right of subrogation by an uninsured or underinsured insurance carrier for the amount paid to an injured person as against the tortfeasor.[5]

■ It must be remembered that in this case the plaintiffs are seeking only the right to maintain a suit against their own underinsured carrier after obtaining the policy limits from the tortfeasor's liability carrier. As previously pointed out, W.Va. Code, 33–6–31(d), relates to uninsured/underinsured motorist suits against a known tortfeasor. It does not foreclose suit by an insured who received the full amount of the tortfeasor's liability policy and also obtained a waiver of the uninsured/underinsured carrier's right of subrogation against the tortfeasor. *Davis v. Robertson, supra*, applies only where a suit is filed against the tortfeasor. In that situation, W.Va. Code, 33–6–31(d), applies and a judgment must be obtained against the tortfeasor before the suit can be filed against the uninsured/underinsured carrier. Indeed, the provisions of W.Va.Code, 33–6–31(d), would seem to indicate that where the suit is filed against the tortfeasor and a copy is served on the uninsured/underinsured carrier, the judgment against the tortfeasor would be binding upon the carrier under the doctrine of collateral estoppel, as set out in *Conley v. Spillers*, 171 W.Va. 584, 301 S.E.2d 216 (1983).

In this case, to require the Postlethwaits to take the additional step of getting a judgment against the tortfeasor flies in the face of concepts of judicial economy, which we outlined in *Christian v. Sizemore*, 181 W.Va. 628, 632, 383 S.E.2d 810, 814 (1989): "Permitting an adjudication of the respective rights and duties of the parties in the same proceeding as the underlying tort action also enhances judicial economy by avoiding multiple lawsuits and the possibility, as here, of separate proceedings in different courts." (Citation omitted).

■ Moreover, Boston suffers no harm by this procedure. Since it is not bound by collateral estoppel principles because no judgment was rendered against the tortfeasor, Mr. Nowlan, the plaintiffs still will have to prove liability and their applicable damages.[6] However, in this situation because the insured is proceeding against his or her own insurance carrier to recover the proceeds of the uninsured/underinsured portion of the policy, the suit is a first-party action. In *Smithson v. United States Fidelity & Guaranty Co.*, 186 W.Va. 195, 202, 411 S.E.2d 850, 857 (1991), we identified a "first-party claim where the insured and [his] insurance company fail to agree about the amount of the loss." Customarily, in the insurance field, a first-party action is where the insured seeks to recover some policy rights against its own insurer.

We have recognized that in first-party actions, an insured may sue the insurer directly. *See, e.g., Smithson v. United States Fidelity & Guar. Co., supra; Thomas v. State Farm Mut. Auto. Ins. Co.*, 181 W.Va. 604, 383 S.E.2d 786 (1989); *Hayseeds, Inc. v. State Farm Fire & Casualty Co.*, 177 W.Va. 323, 352 S.E.2d 73 (1986). As we pointed out in *Davis v. Robertson, supra*, this result is consistent with the vast majority of jurisdictions which have considered "general uninsured motorist statutes ... [and] have concluded that an insured party may sue his insurer without obtaining a judgment against the uninsured motorist who injured him." 175

---

5. W.Va.Code, 33–6–31(f), in pertinent part, provides:

"An insurer paying a claim under the endorsement or provisions required by subsection (b) of this section shall be subrogated to the rights of the insured to whom such claim was paid against the person causing such injury, death or damage to the extent that payment was made."

6. This is the traditional rule in those states where the suit is brought initially against the uninsured/underinsured carrier. *See, e.g., Har-*

*vey v. Mitchell*, 522 So.2d 771 (Ala.1988); *Jernigan v. Progressive Am. Ins. Co.*, 501 So.2d 748 (Fla.App.1987); *Allied Fidelity Ins. Co. v. Lamb*, 361 N.E.2d 174 (Ind.App.1977); *Allstate Ins. Co. v. Elkins*, 63 Ill.App.3d 62, 21 Ill.Dec. 66, 381 N.E.2d 1, *aff'd*, 77 Ill.2d 384, 33 Ill.Dec. 139, 396 N.E.2d 528 (1979); *Reese v. State Farm Mutual Auto. Ins. Co.*, 285 Md. 548, 403 A.2d 1229 (1979); *Sunwalt v. Allstate Ins. Co.*, 12 Ohio St.3d 294, 466 N.E.2d 544 (1984); *Sahloff v. Western Casualty & Sur. Co.*, 45 Wis.2d 60, 171 N.W.2d 914 (1969).

W.Va. at 369, 332 S.E.2d at 825. (Citations omitted). *See generally* Annot., 73 A.L.R.3d 632 (1976).

■ Boston argues that the inability to obtain service upon the tortfeasor, Mr. Nowlan, hampers its ability to defend liability. However, this inability to obtain service does not mean that it is precluded from obtaining his testimony by deposition or otherwise. Its position bears some analogy to those cases where the out-of-state defendant is served under the nonresident motor vehicle statute. W.Va.Code, 56–3–31 (1990). The insurance carrier for the nonresident still is obligated to defend. Those jurisdictions that have considered the absent tortfeasor in a suit against an uninsured/underinsured carrier have held that this is no bar to the direct action against the insurer. *See, e.g., Christiansen v. Farmers Ins. Exch.,* 540 F.2d 472 (10th Cir.1976) (construing Utah law); *Hodges v. Canal Ins. Co.,* 223 So.2d 630 (Miss.1969); *High v. Southwestern Ins. Co.,* 520 P.2d 662 (Okla.1974); *Turlay v. Farmers Ins. Exch.,* 259 Or. 612, 488 P.2d 406 (1971); *Story v. Southern Fire & Casualty Co.,* 532 S.W.2d 277 (Tenn.App.1975); *Willard v. Aetna Casualty & Sur. Co.,* 213 Va. 481, 193 S.E.2d 776 (1973) (construing North Carolina law).

Moreover, in the final analysis, Boston is not without some ability to protect itself by simply refusing to waive its statutory subrogation right against the tortfeasor. The rule we fashion today is a narrow one. It is that a plaintiff is not precluded under W.Va.Code, 33–6–31(d), from suing an uninsured/underinsured insurance carrier if the plaintiff has settled with the tortfeasor's liability carrier for the full amount of the policy and obtained from the uninsured/underinsured carrier a waiver of its right of subrogation against the tortfeasor.

Therefore, the judgment of the Circuit Court of Wetzel County is reversed and this case is remanded for further proceedings.

Reversed and remanded.