434 S.E.2d 391

**Lewis A. HARMAN, Plaintiff Below,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant Below.**

No. 21598.

Supreme Court of Appeals of West Virginia.

Submitted May 5, 1993.

Decided July 16, 1993.

Norris Kantor, Katz, Kantor & Perkins, Bluefield, for plaintiff.

Dwayne E. Cyrus, White's Law Office, Princeton, for defendant.

BROTHERTON, Justice:

This case involves three questions certified from the United States District Court for the Southern District of West Virginia to this Court. The certified questions are as follows:

1. Is an action for willful breach of contractual and good faith duties to settle a claim for uninsured motorist coverage governed by the statute of limitations for tort actions or the statute of limitations for contract actions?

2. Does a denial of coverage to an injured party by a tortfeasor's liability insurance carrier render the tortfeasor's vehicle an "uninsured motor vehicle" within the meaning of West Virginia Code § 33–6–31(b)?

3. Does the partial payment of medical expenses by an insurer who served as both the automobile insurer for the tortfeasor who caused the injury and as the uninsured motorist carrier for the injury party, estop the insurer from seeking dismissal of the injured party's action against the insurer for willful breach of contractual and good faith duties to settle the injured party's claim for uninsured motorist coverage, if such motion to dismiss by the insurer is based on the injury party's failure to institute a personal injury suit against the tortfeasor within the two-year statute of limitations governing tort actions?

The plaintiff below, Lewis Harman, filed suit in the Circuit Court of Mercer County on March 13, 1992, alleging that State Farm had willfully breached its contractual and good faith duties to settle Harman's claim for uninsured motorist coverage and medical payments. Based upon diversity jurisdiction, State Farm removed this action to the United States District Court for the Southern District of West Virginia in Bluefield.

This case relates to an automobile insurance policy issued by State Farm on July 15, 1983, to Arnold Lee and Annie Harman regarding a 1976 Ford Granada. The insurance policy included liability, medical payments, and uninsured motorist coverage. Lewis Harman was a named insured under this policy.

On November 8, 1988, while the policy was in effect, Harman was struck from behind by a second automobile driven by David Neal while he was operating the 1976 Ford automobile. State Farm was also the automobile liability insurance carrier for Mr. Neal.

Harman contends that "thereafter, attempts at settlement began between Lewis A. Harman and the defendant, State Farm...." Harman claims that State Farm offered Mr. Harman $850 after he submitted his medical bills to State Farm for payment under either the Neal policy or the medical payment provision of the Harman policy. The plaintiff contends that State Farm unilaterally decided that some of the bills were not reasonable and necessary and did not make payment on the bills until after the tort statute of limitations had run, and then made only a partial payment.[1]

Harman first filed suit on March 13, 1992, approximately three and one-half years after the accident.[2] State Farm counters that it refused the plaintiff's claim because no cause of action had been filed by Harman on or before November 8, 1990, when the statute of limitations lapsed. In the suit filed in March, 1992, the plaintiff asserted a direct action against State Farm in an attempt to obtain uninsured motorist benefits from Harman's own policy. No judgment was ever obtained against the tortfeasor, nor was any monetary settlement made with Mr. Neal.

State Farm admits that prior to November 8, 1990, it offered Harman $850 for settlement of the property damage claimed. State Farm argues that the offer was made under the liability policy of Mr. Neal and later withdrawn after the two-year statute of limitation lapsed. Further, on April 2, 1990, prior to the lapsing of the statute of limitations, State Farm requested medical records from Harman's counsel in order to determine what injuries he had sustained. State Farm contends that no response was received, and the subsequent liability claims made by Harman for property damage and bodily injury against the Neal liability policy were denied because the two-year statute of limitations had lapsed. Specifically, State Farm responded: "Please be advised that we will not consider Mr. Harman's bodily injury claim since the statute has elapsed...." Finally, State Farm admits that partial payment was made of the plaintiff's medical bills under the medical payment portion of Harman's policy. State Farm argues that the partial payment represented the total of the medical bills incurred by the plaintiff, less certain items not covered under State Farm's medical payments coverage.

Harman's claim filed on March 13, 1992, was based upon the Harman policy underinsured motorist provision and medical payments coverage. Harman filed a claim under his policy because Neal's liability policy was no longer available due to the running of the statute of limitations. After State Farm denied underinsured motorist coverage and refused to pay the medical bills in full, the plaintiff brought this action for breach of contract in the Circuit Court of

---

**1.** The claimed medical bills and related expenses were in excess of $8,000.

**2.** During oral argument before this Court, counsel for the plaintiff admitted that the file was misplaced after the departure of an associate in his office. He also contends, however, that the issues presented are valid questions in need of discussion by this Court.

Mercer County. State Farm removed the action to the United States District Court for the Southern District of West Virginia in Bluefield. The plaintiff alleges that State Farm acted in bad faith and with a vexatious manner, willfully violated provisions of the insurance policy providing coverage for Harman.

The plaintiff maintains that this action for uninsured motorist benefits is a contract action, governed by a ten-year statute of limitations, rather than a tort action with a two-year statute of limitations. He also argues that State Farm's payment of a portion of his medical bills led him to believe that the defendant would settle the claim in good faith and thus, he failed to file a personal injury action against Neal on or before November 8, 1990, when the two-year statute of limitations would run. Thereafter, the United States District Court certified the three questions listed above to this Court.

We first address the second certified question, which asks whether a denial of coverage to an injured party by a tortfeasor's liability insurance carrier renders the tortfeasor's vehicle an uninsured motor vehicle within the meaning of W.Va.Code § 33–6–31(b).[3] In this case, Harman attempted to collect against Neal's liability policy, only to have it denied because the tort statute of limitations had run.

State Farm responded to Harman's claim against the Neal liability policy as follows: "Please be advised that we will not consider Mr. Harman's bodily injury claim since the statute has elapsed...." Based upon this statement, Harman filed against his own uninsured coverage. The plaintiff argues that his uninsured coverage should apply because State Farm "denied coverage" when he attempted to make a claim against Neal's policy. West Virginia Code § 33–6–31(c) defines an uninsured motor vehicle as a motor vehicle to which there is no: (i) bodily injury, liability insurance and property damage liability insurance both in the amount specified by Section 2, Article

4, Chapter 17D as amended from time to time or (ii) there is such insurance but the insurance company writing the same denies coverage thereunder...." Thus, because Harman could not collect against Neal's liability policy, he filed a claim against his own uninsured motorist policy.

We cannot agree to such convoluted logic. To permit a claim for uninsured motorist coverage in this case would make the statute of limitations, regardless of length, meaningless since a plaintiff could always turn to his own uninsured motorist policy for coverage, regardless of how long the plaintiff waited to file suit past the applicable statute of limitations. In the case now before us, Mr. Neal was not operating an uninsured motor vehicle on the day of the accident. The only reason that uninsured motorist coverage is arguably applicable at this point is because the two-year statute of limitations for the tort action against Neal had expired.

■ Likewise, we find no merit in the authority cited by the plaintiff in support of his argument. While the treatise cited by the plaintiff, *Uninsured and Underinsured Motorist Coverage, supra,* states that "the impact of a denial of liability by the tortfeasor's insurer is the same in its effect on the injured parties as the complete absence of insurance would be," it also fails to take into account the lapse of the applicable statute of limitations. The case at hand involves more than a simple denial of liability. The ability of a lawsuit to survive in court is premised on a fundamental element—whether the suit was timely filed. If not, then a court need not reach the merits of the suit. Widiss, *Uninsured and Underinsured Motorist Coverage,* 2d Ed. Vol 1 p. 369 (1981).

■ Further, the defining language of W.Va.Code § 33–6–31(c)(ii) distinguishes a statute of limitations dismissal from a denial of coverage. As above noted, W.Va. Code § 33–6–31(c)(ii) allows uninsured motorist coverage when insurance exists, but is denied. In this case, the coverage no

---

**3.** For a discussion of uninsured motorist coverage, *see Lee v. Saliga,* 179 W.Va. 762, 373 S.E.2d 345 (1988).

longer exists since it lapsed when the Neal liability policy statute of limitations ran, approximately one and one-half years prior to the filing of the law suit. Consequently, we hold that a plaintiff's uninsured motorist coverage is not available as an alternative to the tortfeasor's liability coverage when the plaintiff did not file a claim against the tortfeasor's insurance company until after the statute of limitations had lapsed on the tortfeasor's liability policy. *See also* 8C Appleman, *Insurance Law & Practice* § 5076.15 *et seq.* (1981). Thus, there is no basis for the plaintiff's suit against his own uninsured motorist policy, since the uninsured motorist policy was not available for damages resulting from the November 8, 1988, accident after the Neal liability policy statute of limitations expired.

Recently, this Court addressed the issue of whether a plaintiff, who had settled for policy limits against the tortfeasor's liability carrier, could sue his/her own underinsured motorist insurance carrier. *Postlethwait v. Old Boston Colony Insurance Co.,* 432 S.E.2d 802 (1993). Previous case law, which had not reached that precise issue, essentially required that the plaintiff sue the tortfeasor before the plaintiff could sue for his/her own uninsured/underinsured coverage. In *Postlethwait,* the Court ruled that a plaintiff could sue their uninsured/underinsured carrier after settling with the tortfeasor's liability carrier if the settlement was for the full policy limits and the uninsured/underinsured carrier waived its right of subrogation against the tortfeasor. *Id.* at Syl. pt. 4.

The situation in *Harman* is quite different. Although he had an opportunity, Harman did not settle his claim for any amount. In fact, the only reason he sued under his own uninsured motorist policy is because he failed to file suit against Neal prior to the tolling of the statute of limitations for the tort claim. Further, State Farm did not waive its right of subrogation against the tortfeasor at any time. Consequently, *Postlethwait* cannot be used to advance Harman's claim for uninsured motorist coverage in the present case.

Because we have held that the plaintiff's suit against his own carrier for uninsured motorist coverage is improper, there is no need to reach the remaining two certified questions. This action is remanded to the United States District Court for the Southern District of West Virginia for disposition in accordance with this opinion.

Certified Question Answered.