STATE FARM FIRE & CASUALTY COMPANY, an Illinois Corporation, Plaintiff,

v.

Stewart R. KIRBY and Elizabeth Ann Kirby, Defendants.

Civil Action No. 1:95–CV–42.

United States District Court,
N.D. West Virginia.

March 22, 1996.

Robert G. Steele, Amy M. Smith, Steptoe & Johnson, Clarksburg, WV, for Plaintiff.

David J. Romano, Clarksburg, WV, for Defendants.

## MEMORANDUM OPINION AND ORDER

KEELEY, District Judge.

This matter comes before the Court on the motion of defendants Stewart R. Kirby and Elizabeth Ann Kirby (the "Kirbys") to dismiss or stay further proceedings. The issues underlying this motion have been fully briefed in accordance with Local Rule 2.07, and are ripe for review. For the reasons that follow, the Court GRANTS the defendants' Motion to Dismiss.

## I. BACKGROUND

On August 31, 1994, an explosive force of water from a construction site at the top of a hill directly across the street from their home impacted the Kirbys' home with such force that it pushed in a front foundation wall and tore a basement door from its steel casing. The water had been retained and channeled by Huffman Construction Company ("Huffman"), contractor of the development site.

The Kirbys are named insureds on a homeowners insurance policy issued by State Farm Fire and Casualty Company ("State Farm"). Immediately following the occurrence, the Kirbys notified State Farm of the loss. On the next day, September 1, 1994, State Farm notified the Kirbys in writing that it was denying coverage for their loss because it was excluded from coverage by the "Water Damage" and "Earth Movement" paragraphs of the "Losses Not Insured" section of their homeowners policy. State Farm included a copy of the policy in its letter, and

also in a letter it later sent to the Kirbys' attorney, David J. Romano ("Romano"), on September 16, 1994.

On December 7, 1994, Romano wrote to State Farm disputing its denial of coverage. In his letter he argued that specific portions of the Kirbys' policy covered this loss, and demanded that State Farm immediately adjust the claim and compensate his clients for the full amount of their property damage, as well as consequential damages, and for their loss of income and attorney's fee. Romano also stated that Huffman was primarily liable for the damages to the Kirbys' home, and that he would be willing to preserve State Farm's subrogation rights to any amount paid on the claim from any subsequent recovery the Kirbys obtained from Huffman.

State Farm wrote to Romano on December 20, 1994 and March 2, 1995, indicating that, although it was not withdrawing its previous denial of coverage, it would reexamine the coverage issue. Thereafter, on April 10, 1995, State Farm filed this suit pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, seeking a declaration that the Kirbys are not entitled to insurance coverage for their loss. In a letter dated April 13, 1995, State Farm informed Romano that it had filed this action.

Also on April 13, the Kirbys filed suit against both Huffman and State Farm in the Circuit Court of Harrison County, West Virginia. In that suit, they seek damages both from Huffman, on the underlying tort claim, and also from State Farm, under West Virginia's Unfair Trade Practices Act, W.Va.Code §§ 33–11–1, *et seq.*, and common law, for its refusal to adjust the claim. After the parties agreed, the circuit court, by order dated September 19, 1995, bifurcated the proceedings before it, allowing the suit against Huffman to proceed but staying the action against State Farm pending the outcome of this case.

## II. *ANALYSIS*

The Kirbys have moved to dismiss this action. Alternatively, they seek a stay pending the outcome of the state court action. As grounds for their motion, they contend that their state action involves the same parties,

claims and issues as the present case. They argue that a substantial waste of judicial resources would result if both actions are allowed to proceed. They also argue that this Court should defer to the proceedings in state court because all the claims arising from the damage to the Kirby home, including the non-removable underlying tort claims against Huffman, can be decided there, while this Court may only decide the coverage dispute between them and State Farm. They further point out that deference to the state court proceeding will foster the principles of comity and federalism by recognizing that state law, not federal law, governs the rights and liabilities of the various parties to this action, that the Circuit Court of Harrison County has processed this action more fully, and that State Farm's rights will be adequately protected in the state court litigation.

State Farm argues that this action should be allowed to proceed because it involves issues of coverage that will not be taken up in the state proceeding. It also contends that any interest in fostering the principles of comity and federalism is outweighed by the federal interest in deciding controversies between citizens of different states and preventing local prejudice from favoring local parties.

### A. *Federal Jurisdiction Under the Declaratory Judgment Act.*

Normally, federal district courts are obliged to fully exercise the jurisdiction given to them by Congress. In *Colorado River Water Conservation District v. U.S.,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), the United States Supreme Court reiterated the axiom "that federal courts have a 'virtually unflagging obligation … to exercise the jurisdiction given them [,]'" *id.* at 817, 96 S.Ct. at 1246 (*citing Cohens v. Virginia,* 19 U.S. (6 Wheat) 264, 5 L.Ed. 257 (1821)), and held that the pendency of a parallel state court action is not proper grounds for refusal to hear a case. The Court declared that a district court may only decline to exercise its jurisdiction in "exceptional circumstances." *Colorado River,* 424 U.S. at 813, 96 S.Ct. at 1244.

In *Wilton v. Seven Falls Co.,* — U.S. —, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995), however, the Supreme Court recognized an exception to this general rule for situations in which a district court exercises jurisdiction over a case pursuant to the Declaratory Judgment Act. *Wilton* directs a district court to apply the guidelines enunciated in *Brillhart v. Excess Insurance Co.,* 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942), and not the "exceptional circumstances" test of *Colorado River,* when deciding whether to dismiss or stay a declaratory judgment action while parallel state court proceedings are pending. *Wilton,* — U.S. at —, 115 S.Ct. at 2143.

■ According to *Brillhart,* district courts should decline to exercise jurisdiction over declaratory judgment actions "where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." *Brillhart,* 316 U.S. at 495, 62 S.Ct. at 1176. *Wilton* broadens that holding by recognizing that actions brought under the Declaratory Judgment Act have "distinct features" which "justify a standard vesting district courts with greater discretion than that permitted under the 'exceptional circumstances' test of *Colorado River.*" *Wilton,* — U.S. at —, 115 S.Ct. at 2142. Accordingly, the decision to assume jurisdiction over a declaratory judgment action is discretionary, not obligatory or automatic. *Id.* at —, 115 S.Ct. at 2140.

> [A] district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close. In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration.

*Id.* at —, 115 S.Ct. at 2143.

### B. *The Fourth Circuit's Framework.*

The holding in *Wilton* significantly impacts this Court's analysis of whether to dismiss a declaratory judgment action in deference to correlative state court proceedings involving the same issues and parties. Even before *Wilton,* however, the Fourth Circuit had established a framework within which district courts were to analyze whether to stay or dismiss a pending declaratory judgment action. That precedent comports with *Wilton's* observation that district courts should have great latitude in deciding whether to assert jurisdiction over declaratory judgment actions. In *Aetna v. Quarles,* 92 F.2d 321 (4th Cir.1937), for example, the Fourth Circuit stated:

> The federal Declaratory Judgment Act [citation omitted] is not one which adds to the jurisdiction of the court, but is a procedural statute which provides an additional remedy for use in those cases and controversies of which the federal courts already have jurisdiction. [citations omitted] This being true, there is no ground for applying the settled rule, [citation omitted] that the courts may not decline the exercise of jurisdiction conferred upon them.

*Id.* at 323—324.

*Quarles* discussed in detail the proper circumstances under which a district court should exercise jurisdiction over a declaratory judgment action:

> [T]he discretion to grant or refuse the declaratory relief 'is a judicial discretion, and must find its basis in good reason,' ... We think that this discretion should be liberally exercised to effectuate the purposes of the statute and thereby afford relief from uncertainty and insecurity with respect to rights, status and other legal relations, but it should not be exercised for the purpose of trying issues involved in cases already pending, especially where they can be tried with equal facility in such cases, *or for anticipating the trial of an issue in a court of co-ordinate jurisdiction.*

*Id.* at 324 (emphasis added). *Quarles* also states that the remedy of declaratory judgment

> should not be accorded ... to try particular issues without settling the entire controversy, or to interfere with an action which has already been instituted.

*Id.* at 325. The court then cited two instances in which a district court should assume jurisdiction over such an action:

> (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.

*Id.*

In the present case, these two conditions are satisfied. There is no doubt that a declaration on the coverage issue will serve a useful purpose in clarifying and settling the legal relation between the Kirbys and State Farm. Nor can it be disputed that such a declaration would abate the controversy over whether the Kirbys' loss is covered under the terms of their homeowners' insurance policy.

In *Mitcheson v. Harris,* 955 F.2d 235 (4th Cir.1992), the Fourth Circuit revisited the question of whether a federal district court should entertain a declaratory judgment action involving insurance coverage issues when underlying tort litigation is proceeding against the insured in state court. According to *Mitcheson,* in addition to the factors discussed in *Quarles,* a district court should take into account considerations of federalism, efficiency and comity, and recognize that these considerations may, in certain circumstances, require the court to refuse to entertain the action even though the *Quarles* requirements are satisfied. *Id.* at 237–241.

■ In *Mitcheson,* and in the subsequent case of in *Nautilus Ins. Co. v. Winchester Homes Inc.,* 15 F.3d 371 (4th Cir.1994), the Fourth Circuit distilled these considerations into a four point test:

> (i) the strength of the state's interest in having the issues raised in the federal

declaratory action decided in the state courts (ii) whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending (iii) whether permitting the federal action to go forward would result in unnecessary 'entanglement' between the federal and state court systems, because of the presence of 'overlapping issues of fact or law,' (iv) whether the declaratory judgment action is being used merely as a device for 'procedural fencing'—that is, to provide another forum in a race for res judicata or to achieve a federal hearing in a case otherwise not removable.

*See Mitcheson,* 955 F.2d at 237–239; and *Nautilus,* 15 F.3d at 377. For the reasons that follow, the Court finds that application of these factors to the facts in this case warrants dismissal of this action.[1]

### C. The Nautilus Factors.

■ 1. The first factor considered by *Nautilus* is the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts. An analysis of this factor, however, has to begin with reference to the holding in *Mitcheson.* There the Fourth Circuit held that the district court should weigh the state interest in speaking authoritatively on issues of state law against the federal interest in affording protection to out of state parties when deciding whether to assert jurisdiction over a declaratory judgment action. *Mitcheson,* 955 F.2d at 237. It also reasoned that "the state's interest in having the issues raised in the federal action decided in its own court was 'particularly strong' [if] those issues were all governed by state law, and the issues of state law presented were 'close,' 'problematic' and 'difficult.'" *Id.* at 236–40.

---

1. Dismissal, as opposed to stay, is the appropriate remedy in this case, because the state court action will resolve the controversy underlying the federal declaratory action. In *Wilton, supra,* the Supreme Court, in a footnote, commented on the proper circumstances under which to issue a stay of the federal action pending the outcome of the state action:

> We note that where the basis for declining to proceed is the pendency of a state proceeding, a stay will often be the preferable course, insofar as it assures that the federal action can

proceed without risk of a time bar if the state case, for any reason, fails to resolve the matter in controversy. [citations omitted].

*Wilton,* —— U.S. at —— n. 2, 115 S.Ct. at 2143 n. 2.

As discussed *infra,* resolution of the bad faith claim the Kirbys filed against State Farm in state court will necessarily entail resolution of the coverage issue at the heart of the federal declaratory action. Accordingly, dismissal of the federal action, as opposed to stay, is appropriate here.

In *Mitcheson* the declaratory judgment action turned on the construction of the word "occurrence." The Fourth Circuit held that proper interpretation of this term was an issue of state law that was "close" and therefore warranted deference to state court proceedings. *Id.* at 240.

In *Nautilus*, an insurer brought an action in federal court seeking a declaration that it had no duty to defend an insured because of material misrepresentations made in the application for coverage. The Fourth Circuit held that the State of Maryland's interest in deciding these issues was not sufficiently compelling to "weigh against the exercise of federal jurisdiction" because the resolution of these issues "involve[s] the routine application of settled principles of law to particular disputed facts." *Nautilus*, 15 F.3d at 378.

In this case, the issues raised are ones of contract interpretation. As such, they are governed exclusively by West Virginia law. Relying on *Nautilus*, the plaintiff argues that West Virginia has a diminished interest in having the issues presented in this action decided in state court because the questions raised involve "the routine application of settled principles of law to particular disputed facts." *Id.* The plaintiff does not, however, state the particular principles that would apply to this case.

A cursory review of the parties' respective positions reveals that the coverage issue is likely to turn heavily on the particular definitions attached to the policy terms "water damage", "earth movement" and "explosion". As the defendants correctly point out, there does not seem to be any case in which the

West Virginia Supreme Court of Appeals has interpreted the particular policy terms at issue. It follows, therefore, that the tribunal which passes on this question will be reviewing an issue of first impression in the State of West Virginia.

Furthermore, even if the issues of state law in this case are not "close", "problematic", or "difficult", the fact that they are controlled by West Virginia law weighs in favor of deference to the state action. Although *Nautilus* held that the fact that an issue is governed by state law does not, alone, justify a district court's decision not to exercise jurisdiction over a declaratory judgment action, 15 F.3d at 378, later, in *Continental Casualty Co. v. Fuscardo*, 35 F.3d 963 (4th Cir.1994), the Fourth Circuit stated:

> "[W]hen considered in conjunction with the other *Nautilus* factors, the fact that state law controls the questions before the court militates in favor of [a] district court's decision to decline jurisdiction."

Id. at 967.

Here, when considered in conjunction with the other *Nautilus* factors, the fact that there are no West Virginia cases interpreting insurance policy language analogous to the "earth movement", "water damage" or "explosion" provisions of the Kirbys' homeowners' policy militates strongly in favor of dismissal of the federal action.

2. The second factor considered in *Nautilus* is whether the issues can be more efficiently resolved in the court in which the state action is pending [2]. The relevant ques-

---

**2.** Recent developments in West Virginia law leave no doubt that the Kirbys may bring their claims against State Farm in their state court action against Huffman. In *State ex. rel. State Farm v. Madden*, 192 W.Va. 155, 451 S.E.2d 721 (1994), the West Virginia Supreme Court of Appeals held that, under W.V.R.C.P. 18(b), an injured plaintiff could consolidate a bad faith/unfair trade practices claim against an insurance company with the underlying tort claim against the policyholder, as long as the claims against the insurer are bifurcated and any discovery related to them is stayed pending resolution of the underlying tort claim. In rejecting State Farm's argument that such joinder of claims was not permitted under the court's prior holdings in *Davis v. Robertson*, 175 W.Va. 364, 332 S.E.2d 819 (1985), *modified, Postlethwait v. Boston Old*

*Colony Ins. Co.*, 189 W.Va. 532, 432 S.E.2d 802 (1993) and *Jenkins v. J.C. Penney*, 167 W.Va. 597, 280 S.E.2d 252 (1981), the court stated:

> The rationale behind both *Jenkins* and *Davis* was to continue the long-standing policy of avoiding unnecessary mention of insurance coverage at trial because of the possibly prejudicial impact on the jury [citations omitted]. Today however, we conclude that merely allowing the joinder of the insurer with the insured would not necessarily inject insurance issues into all such cases. As long as the claims against the insurer are bifurcated from those against the insured, and any discovery or proceedings against the insurer are stayed pending resolution of the underlying claim between the plaintiff and the insured, there

tion is whether considerations of judicial economy favor dismissal of the federal action. *Mitcheson* held that

> In deciding whether to entertain a declaratory judgment action, a federal court should analyze *whether its resolution of the declaratory action will settle all aspects of the legal controversy.* This court has long recognized that it makes no sense as a matter of judicial economy for a federal court to entertain a declaratory action when the result would be to 'try a particular controversy by piecemeal, or to try particular issues without settling the entire controversy.'

955 F.2d at 239, (*quoting Quarles,* 92 F.2d at 325).

Here, the controversy consists of two independently viable claims, the first against the alleged tortfeasor, Huffman, the second against State Farm. Both arise out of the same common nucleus of operative facts. While the state court action can address both claims, in this federal action only the coverage dispute between the Kirbys and State Farm can be decided. If the Court allows this action to proceed, it would be trying the litigation by piecemeal, resolving only one claim and leaving the tort claim for the state court. Under *Mitcheson,* this would be an inefficient allocation of judicial resources and should be avoided.

Although State Farm argues that its federal action will not be duplicative of the state action filed by the Kirbys, logic dictates otherwise. The state court action clearly encompasses the factual and legal loci of the federal action. The plaintiff admits as much in its memorandum in opposition to defendants' motion to dismiss, stating:

> In this case, the state court proceeding consists solely of a tort action against Huffman Construction and its principal *and* an action against State Farm for alleged violations of the West Virginia Unfair Trade Practices Act and common law

(State Farm's Response to Motion to Dismiss at 20) (emphasis added).

The gravamen of the Kirbys' charges is that State Farm knowingly delayed and ultimately denied coverage on a valid claim, hoping that its economic superiority would intimidate them into dropping the claim altogether. In order to prove these charges, the Kirbys will have to show that State Farm knew or should have known that the loss was covered under their homeowners' insurance policy even as it denied coverage. It will be impossible to assess State Farm's motives in denying coverage without resolving the question of whether coverage existed in the first place. Because the disposition of the state action will necessarily entail resolution of the coverage issue, the federal action, in which coverage is the only issue, would duplicate the state action.

Moreover, the state court is the only forum in which the entire controversy can be resolved because the underlying tort claim is non-removable, as both the Kirbys and Huffman are West Virginia residents. Indeed, this is precisely the type of situation that the Fourth Circuit referred to in *Quarles* when it stated that district courts should avoid "try[ing] a controversy by piecemeal, or try[ing] particular issues without settling the entire controversy." *Quarles,* 92 F.2d at 325.

State Farm relies on *White v. National Fire Ins. Co.,* 913 F.2d 165 (4th Cir.1990), and *Stout v. Grain Dealers Mutual Insurance Co.,* 307 F.2d 521 (4th Cir.1962), to support its contention that the federal and state actions are not duplicative. These cases are distinguishable, however, by virtue of the fact that the underlying state court proceedings did not involve the same parties and issues as those in the declaratory judgment actions. For example, in *Stout,* the plaintiff brought a federal action seeking a declaration that his insurance company had a duty to defend him in a state court tort

---

should be no undue prejudicial impact on a jury of joining in an original pleading or amending a pleading to assert bad faith or unfair insurance practices counts against an insurer in an original action against an insured.

*Madden,* 451 S.E.2d at 725.

The fact that *Madden* involved a third party claim against an insurer and the claim here is a first party claim is of no consequence. The Fourth Circuit has recently held that *Madden* applies with "equal force" to such claims. *See Maher v. Continental Casualty Co.,* 76 F.3d 535 (4th Cir.1996).

action, while, in *White,* a plaintiff in a state court personal injury action brought a federal action against an insurance company to determine the limits of the alleged tortfeasor's uninsured motorist coverage. The facts in these cases differ significantly from those here in which the parties to the federal action are also parties in the state action, and the legal questions at the core of the federal action are at issue in the state action.

If allowed to proceed, this action would be duplicative of a corresponding state court action in which the entire controversy, as opposed to only one piece, is capable of resolution. To litigate this action would be an inefficient allocation of scarce judicial resources. The Court, therefore, concludes that the second factor also militates strongly in favor of deference to the state court action.

3. The third factor considered in *Nautilus* is whether permitting the action to go forward would result in unnecessary "entanglement" between the federal and state court systems because of the presence of overlapping issues of fact or law. In *Mitcheson,* the court held that dismissal of the declaratory judgment action was appropriate because overlapping issues of fact and law would have

> 'frustrate[d] the orderly progress' of the state court proceedings by leaving the state court with some parts of a case foreclosed from further examination but still other parts in need of full scale resolution.

*Mitcheson,* 955 F.2d at 239 (*quoting Phoenix Ins. Co. v. Harby Marina, Inc.,* 294 F.Supp. 663, 664 (N.D.Fla.1969)).

Such difficulties would arise here if this action were allowed to proceed. Inasmuch as the state and federal actions arise from the same factual scenario, any factual determinations made by this Court would undoubtedly have an issue preclusive effect on the Kirbys' state action against Huffman. For example, to determine whether the disputed homeowners' policy provides coverage for the damage to the Kirbys' home, the Court will have to determine whether the loss asserted was the result of an "explosion" or "water damage." This, in turn, will entail assessment of the amount of force with which the water struck the Kirbys' house. In order

to determine this, the Court may well have to decide what caused the water to escape. Similarly, this Court's resolution of the coverage question could have an issue preclusive effect on the Kirbys' state court bad faith action against State Farm.

Because such determinations would foreclose some parts of the state court action, and thereby frustrate the orderly progress of that action, this factor also weighs in favor of dismissal of the action.

4. The final factor considered in *Nautilus* is whether the declaratory judgment action is being used merely as a device for procedural fencing. The court further defined "procedural fencing" as seeking entry to "the forum in a race for res judicata or to achiev[e] a federal hearing in a case otherwise not removable." *Nautilus,* 15 F.3d 371, (*quoting* 6A Moore's Federal Practice ¶ 57.08[5]). There is no evidence in the record before this Court that, in filing this action, State Farm was engaging in "procedural fencing."

*Nautilus* seems to suggest that "procedural fencing" is only evident in situations where "a party has raced to federal court in an effort to get certain issues that are already pending before the state courts resolved first in a more favorable forum," or in situations in which the declaratory action is filed in order to obtain a federal forum in a case that could not otherwise be removed. *Nautilus,* 15 F.3d at 380. State Farm filed the present declaratory action three days before the Kirbys filed their action in state court, and although the case would not otherwise be removable, there is no clear indication that this was State Farm's motivation in filing the case.

Nor does the fact that State Farm filed its case in federal court before the Kirbys instituted their state action, standing alone, necessarily weigh in favor of retention of the federal action. In both *Wilton* and *Brillhart,* the Supreme Court upheld the dismissal of federal declaratory actions that were filed by insurers before corresponding state actions in anticipation of these state actions. *See Wilton,* —— U.S. at ——, 115 S.Ct. at 2139, *Brillhart,* 316 U.S. at 493, 62 S.Ct. at 1175.

In cases in which the later filed action appears to be the product of "forum shopping", however, earlier filing can be persuasive evidence that the federal action should be retained. In this case, there is no evidence that the Kirbys were forum shopping when they filed their action in state court. From the outset, they have asserted claims against both Huffman and State Farm. This is not a case in which a plaintiff is suddenly attempting to implead an insurer in a year old personal injury claim to preserve a state forum. Romano's correspondence with State Farm prior to the filing of the federal action clearly indicates that the Kirbys intended to pursue claims against Huffman, and, if necessary, against State Farm. Because there is no evidence of procedural fencing on either side, the Court concludes that this factor is the only one that weighs in favor of retention of the federal action.

The early filing and absence of procedural fencing on the part of the plaintiff are outweighed by the other considerations of federalism, efficiency, and comity which militate in favor of dismissal of the action. Specifically, considerations of judicial efficiency and concerns over entanglement between the two court systems that have been discussed in this opinion demand that the Court defer to a state action where the entire controversy is capable of resolution. Accordingly, this federal declaratory action should be DISMISSED.

### ORDER

For the reasons stated in the accompanying memorandum, it is ORDERED that this case be, and the same is, DISMISSED, with prejudice. The Clerk is directed to strike this case from the docket of this Court and to transmit copies of this Order to counsel of record herein.