GATEWOOD LUMBER, INC., Plaintiff,

v.

TRAVELERS INDEMNITY COMPANY, Defendant.

Civ. A. No. 6:95–0366.

United States District Court, S.D. West Virginia, Parkersburg Division.

Sept. 25, 1995.

H.F. Salsbery, Jr., Salsbery & Druckman, Charleston, WV, for plaintiff.

Michael L. Minsker & Charles R. Steele, Cozen & O'Connor, Charlotte, NC, for Travelers.

Susan E.F. Henderson, Burton & Kilgore, Princeton, WV, and James W. Dudley, Bluefield, VA, for J & S.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

On September 7, 1994 Defendant Travelers issued a blanket property insurance policy covering Plaintiff Gatewood Lumber's business properties, including a sawmill located in Parkersburg, Wood County, West Virginia. This action had its genesis in a fire that destroyed a portion of the sawmill on September 24, 1994. At the time, the sawmill was occupied by Gatewood's tenant, J & S Hardwoods, Inc., under a lease-purchase contract.

On October 12, 1994, Gatewood filed an action in the Circuit Court of Wood County, West Virginia, alleging, *inter alia,* J & S breached the lease-purchase contract. J & S counterclaimed alleging Gatewood breached the contract and that J & S is entitled to the fire insurance proceeds. Gatewood and J & S are West Virginia Corporations and both filed claims with Travelers for the fire insurance proceeds. Gatewood claims it is the sole insured party under the policy. Travelers paid Gatewood's remaining mortgage balance on the sawmill building and its out-of-pocket expenses that were caused by the fire, but refuses to pay remaining amounts Gatewood claims under the policy until the payment dispute between Gatewood and J & S is resolved judicially. Travelers fears it would be exposed to the potential for multiple liability if it made payment of the total proceeds to Gatewood only. Travelers is not a party to the West Virginia action.

On May 16, 1995, Gatewood commenced the instant action alleging Travelers breached the insurance contract, engaged in bad faith, failed to investigate Plaintiff's claim properly, and attempted to settle for less than is due the insured under the contract. Gatewood and Travelers disagree about the proper measure of indemnification under the insurance policy. Gatewood seeks declaratory judgment construing the insurance contract and determining the amount of coverage provided. In its counterclaim, Travelers requests rescission of the insurance contract and a declaration establishing the rights and status of the parties, as well as the extent of its liability under the policy. Travelers also filed a third party complaint in interpleader, pursuant to Rule 22 of The Federal Rules of Civil Procedure, requesting impleader of Gatewood and J & S, that The Travelers be permitted to deposit the amount of money it agrees it owes under the policy, and asking the Court to determine the rights and interests to the proceeds as between Gatewood and J & S.

The current procedural tangle is daunting. Now pending is Gatewood's motion to quash or to strike Traveler's third party complaint in interpleader, Travelers' response to that motion, and Gatewood's reply. Gatewood threatens to join J & S as a defendant to destroy diversity jurisdiction if the Court grants Travelers' third party complaint. Also pending is Travelers' motion for bifurcation and a stay of Gatewood's claims of bad faith and statutory violations and Gatewood's response. The Court declines to resolve these motions on their merits. For reasons that follow, the Court STAYS the action and places it on the inactive docket.

### I.

■ Our Court of Appeals has held, under the Declaratory Judgment Act, "federal

courts have discretion in deciding whether to hear a declaratory judgment action." *Mitcheson v. Harris*, 955 F.2d 235, 237 (4th Cir.1992). Although the parties in the instant action are seeking substantive relief in addition to declaratory judgment, the substantive claims are so closely tied to the interpretation of the insurance contract the resolution of those claims is dependent on the outcome of the declaratory judgment claims. Because requests for declaratory judgment are at the heart of this case, the Court has broad discretion to stay or dismiss the action.

It is axiomatic that federal courts have a "virtually unflagging obligation ... to exercise the jurisdiction given them." *Colorado River Water Conser. Dist. v. U.S.*, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976), citing *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 404, 5 L.Ed. 257 (1821). The *Colorado River* Court noted that "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the federal court having jurisdiction" *Id.*, 424 U.S. at 817, 96 S.Ct. at 1246 (citations omitted), and that a district court may decline to exercise its jurisdiction only under "exceptional circumstances." *Id.* 424 U.S. at 813, 96 S.Ct. at 1244.

## II.

Recent decisions have made it clear, however, a district court need not be faced with exceptional circumstances to stay or dismiss duplicative litigation in the declaratory judgment context. This year, the Supreme Court held the rules of *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942), rather than *Colorado River*, governs a district court's decision to stay or dismiss a declaratory judgment action while parallel state court proceedings are pending. *Wilton v. Seven Falls Co.*, —— U.S. ——, ——, 115 S.Ct. 2137, 2143, 132 L.Ed.2d 214 (1995). The *Wilton* Court explained that:

> By the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants. Consistent with the nonobligatory nature

of the remedy, a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close. In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration.

*Wilton*, —— U.S. at ——, 115 S.Ct. at 2143 (footnote omitted). The Court pointed out:

> *Brillhart* indicated that, at least where another suit involving the same parties and presenting opportunity for ventilation of the same state law issues is pending in state court, a district court might be indulging in "[g]ratuitous interference," *ibid.*, if it permitted the federal declaratory action to proceed.

*Id.* at ——, 115 S.Ct. at 2141. The Court also noted *Colorado River* did not deal with actions brought under the Declaratory Judgment Act and that "distinct features" of the Act "justify a standard vesting district courts with greater discretion in declaratory judgment actions than that permitted under the 'exceptional circumstances' test of *Colorado River* and *Moses H. Cone* [*Memorial Hospital v. Mercury Const. Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) ]." *Id.* at ——, 115 S.Ct. at 2142.

Similarly, The United States Court of Appeals for the Fourth Circuit, prior to *Wilton*, established a framework by which a district court is to determine whether it may stay or dismiss a pending declaratory judgment action. Fourth Circuit precedent is consistent with *Wilton*'s emphasis on the special status of declaratory judgment actions. The Court noted it had:

> long recognized that it makes no sense as a matter of judicial economy for a federal court to entertain a declaratory action when the result would be to "try a controversy by piecemeal, or to try particular issues without settling the entire controversy." *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir.1937); *accord* 10A Charles A. Wright, *et al., supra,* § 2759.

*Mitcheson v. Harris,* 955 F.2d 235, 239 (4th Cir.1992). The Court went on to observe the inefficiencies resulting from allowing "separate suits stemming from the same overall controversy and involving overlapping issues to proceed simultaneously on parallel tracks" and to point out that following such a course "hardly husbands scarce judicial resources." *Id.* at 239.

The Court of Appeals has developed a two part analysis for determining whether a district court should stay or dismiss a declaratory judgment action. First, a district court is directed to consider whether the action:

> (i) " 'will serve a useful purpose in clarifying and settling the legal relations in issue,' " and (ii) " 'will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.' " *Nautilus,* [*Ins. Co. v. Winchester Homes, Inc.*], 15 F.3d [371] at 375 [ (4th Cir.1994) ] (referencing *White v. National Union Fire Ins. Co.,* 913 F.2d 165 (4th Cir.1990) and *Quarles*) (citations omitted).

*Continental Cas. Co. v. Fuscardo,* 35 F.3d 963, 965 (4th Cir.1994). Secondly, if the action meets those criteria, the district court should, according to *Nautilus Insurance Co. v. Winchester Homes,* 15 F.3d 371, 377 (4th Cir.1994), consider four factors:

> 1) the strength of the state's interest in having the issues raised in the federal declaratory action decided in state court; 2) whether the issues raised in the federal action can be more efficiently resolved in the pending state action; 3) whether the federal action in unnecessary entanglement between the federal and state systems due to overlapping issues of fact or law; 4) whether the federal action is being used merely as a device for "procedural fencing," i.e., to provide another forum in a race for *res judicata. Nautilus,* 15 F.3d at 377.

*Continental Cas. Co. v. Fuscardo,* 35 F.3d 963, 966 (4th Cir.1994). The *Nautilus* Court emphasized the importance of considerations of comity and federalism to a district court's decision. It pointed out:

> when a federal court is confronted with an insurer's request for declaratory judgment on coverage issues during the pendency of related litigation in the state courts, its discretion must be guided not only by the criteria outlined in *Quarles,* which focus on the general utility of the declaratory relief sought, but also by the same considerations of federalism, efficiency, and comity that traditionally inform a federal court's discretionary decision whether to abstain from exercising jurisdiction over state law claims in the face of parallel litigation in the state courts.

*Nautilus,* 15 F.3d at 376.

Recently, this Court analyzed its authority to stay or dismiss declaratory judgment actions on the basis of the *Quarles* criteria and the *Nautilus* factors. In *Astorg Motor Co. v. Westfield Insurance Co.,* 866 F.Supp. 964 (S.D.W.Va.1994) and in *American Nat. Property and Cas. Co. v. Weese,* 863 F.Supp. 297 (S.D.W.Va.1994), after weighing the *Quarles* and *Nautilus* factors and determining that considerations of federalism, efficiency, and comity did not trump the *Quarles* criteria, the Court declined to dismiss the actions. In the instant action, however, these same considerations tip the balance in the other direction, especially when viewed with *Wilton's* emphasis on the unique breadth of a district court's discretion in declaratory actions.

### III.

### THE *NAUTILUS* FACTORS

█ Although the declaratory relief sought in the instant action likely would achieve the ends of clarifying and settling the legal relations at issue and would afford relief from the uncertainty giving rise to the proceedings, as set out in *Quarles,* the competing considerations delineated in *Nautilus* favor the staying or dismissing the instant action.

First, West Virginia has an interest in having the issues raised in the declaratory action decided in state court because the requests for declaratory judgment involve issues of state law. The Fourth Circuit has indicated that, "when considered in conjunction with the other *Nautilus* factors, the fact that state law controls the questions before the court militates in favor of the district

court's decision to decline jurisdiction." *Continental Cas. Co.* 35 F.3d at 967.

The second *Nautilus* factor is also satisfied in the instant action because the issues raised could be resolved more efficiently in the pending state court action. The West Virginia litigation was filed first and the state court is capable of entertaining a declaratory judgment action that will resolve the same issues this federal action would. Because all of the issues may be resolved in the state proceeding, there is no necessity to go forward with duplicative federal litigation contemporaneously.

Assessing the third *Nautilus* factor, the federal action might result in unnecessary conflict between federal and state courts because of overlapping issues of fact or law. Gatewood, the party responsible for bringing this action to federal court in the first instance, has intimated that if Travelers' third party complaint is allowed by the Court, it will move to amend the complaint to add claims against J & S Hardwoods, Inc. with the goal of destroying diversity jurisdiction. In its motion to strike or quash Defendant's third party complaint, Gatewood also argues the third party complaint destroys diversity. If Gatewood makes good its threat to destroy diversity, then nearly identical issues of fact and law would almost certainly dominate both actions.

Even if this Court is able to maintain jurisdiction, despite the intentions of its reluctant suitors, it is probable, because the claims asserted by the parties are so closely linked as to be interdependent, the scope of the state action would expand to encompass many of the same issues of fact or law arising in this federal action. Further, the state action is unlikely to go away; Gatewood has represented to this Court its unwillingness to abandon state litigation in favor of the federal action.

In regard to the fourth *Nautilus* factor, Gatewood's eagerness to destroy federal jurisdiction in its own action indicates it may be engaged in a form of procedural fencing or forum shopping.

All of the *Nautilus* factors indicate, therefore, this Court should consider staying or dismissing the instant action. Even if all four factors were not satisfied, however, a stay or dismissal would yet be appropriate. The *Continental* Court permitted a district court to decline to entertain a declaratory judgment action when only three of the factors weighed in favor of dismissal. *Continental Cas. Co.,* 35 F.3d at 968.

Finally, it is not clear, post *Wilton,* a district court in this circuit is now required to consider the *Quarles/Nautilus* framework in its decisions to stay or dismiss declaratory judgment actions. Although the *Nautilus* factors continue to provide a useful guideline for a district court to use in deciding whether to entertain a declaratory judgment action, to the extent that they are viewed as a set of rigid governors of a district court's discretion, they may no longer be strictly binding.[1] As the Supreme Court pointed out:

> Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare rights of litigants. On its face, the statute provides that a court *"may* declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a) (1988 ed., Supp.V.) (emphasis added).

*Wilton,* —— U.S. at ——, 115 S.Ct. at 2142. Consistent with *Wilton,* Fourth Circuit precedent has emphasized repeatedly that concerns of federalism, comity, and efficiency are proper components of a district court's decision to stay or dismiss a declaratory judgment action. Those concerns as outlined in *Mitcheson* and developed in *Nautilus* and *Continental,* when considered in light of *Wil-*

---

1. In its holding that a district court's refusal to entertain a declaratory judgment action should be reviewed by Court of Appeals according to an abuse of discretion standard the *Wilton* Court refused to grant declaratory relief for one of the parties in that action *de novo,* but instead found it to be more consistent with the Declaratory Judgment Act to "vest district courts with discretion in the first instance, because facts bearing on the usefulness of the declaratory judgment remedy, and the fitness of the case for resolution, are peculiarly within their grasp." *Wilton,* —— U.S. at ——, 115 S.Ct. at 2144 (citation omitted).

*ton*, lead this Court to decline resolution of the instant action now.

## IV.

For the foregoing reasons, the Court hereby STAYS this action in the interest of comity and judicial economy. In exercising the choice to stay rather than dismiss the action, the Court wishes to alleviate the risk of a possible time bar to otherwise viable causes if the State action fails to resolve all matters in controversy.

The clerk is directed to remove this action from the docket for a period of one year. Pending motions are denied without prejudice to motions for reinstatement. If the litigation has not been resolved in its entirety by the state court within the stay period, the Court will entertain a motion to reinstate the action or such portions as remain unresolved. The Clerk is directed to send a copy of this Memorandum Opinion and Order to counsel of record.