**ALLSTATE INSURANCE CO., Plaintiff,**

v.

**Danielle DiGIORGI, et al., Defendants.**

No. 2:97–1171.

United States District Court,
S.D. West Virginia,
Charleston Division.

Feb. 11, 1998.

Brent K. Kesner, Kesner, Kesner & Bramble, Charleston, WV, for plaintiff.

Vincent J. King, Charleston, WV, J. Timothy DiPiero, DiTrapano & Jackson, Charleston, WV, for defendants.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending is Defendants' motion to dismiss. The matter is ripe for review. For reasons that follow, the Court **DENIES** Defendants' motion.

### I. FACTUAL BACKGROUND

Danielle DiGiorgi, daughter of divorced parents Gino DiGiorgi and Amy Carte,[1] suffered an accidental gunshot wound while at her father's residence on September 29, 1996.

1. Both Gino DiGiorgi and Amy Carte are residents of Charleston, West Virginia.

A neighborhood friend wounded Danielle, using a gun found in Gino DiGiorgi's home.

At the time of the occurrence, Gino DiGiorgi's home was insured under a policy issued by Plaintiff Allstate Insurance Company ("Allstate"). A claim was filed with Allstate on Danielle's behalf. Based on its investigation of the claim, Allstate filed a complaint with this Court on December 3, 1997, seeking a determination of its obligations under the policy. Allstate is the sole Plaintiff and Danielle DiGiorgi and Amy Carte, the Defendants. It appears the main issue is whether any policy language excludes coverage for Danielle DiGiorgi. For instance, if Danielle was an "insured person or regular resident of the insured premises," see Pl.'s Mem. Resp. at 3 (quoting Coverage Y of policy), an exclusion may preclude coverage.

On December 8, 1997 Danielle DiGiorgi, Amy Carte, Glenn A. Carte, Jr., and Danielle's half-sister, Catherine Faye Carte, filed a complaint in the Circuit Court of Kanawha County, West Virginia. The defendants are Gino DiGiorgi and Allstate. The complaint sought (1) damages from Gino DiGiorgi for his alleged negligence; (2) declaratory judgment of Allstate's obligations under the policy; and (3) damages from Allstate for its alleged unfair claims settlement practices in handling the case. Mr. and Mrs. Carte and Catherine Faye Carte also seek damages for loss of consortium.

On December 23, 1997 Danielle DiGiorgi and Amy Carte moved to dismiss the federal action, arguing this Court should exercise its discretion to decline to hear the case.

## II. DISCUSSION

### A. Federal Jurisdiction for Declaratory Judgment Actions

Our Court of Appeals has held federal courts have discretion over whether to hear a declaratory judgment action under the Declaratory Judgment Act. *Mitcheson v. Harris*, 955 F.2d 235, 237 (4th Cir.1992). The Supreme Court has stated,

Consistent with the nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking

a declaratory judgment before trial or after all arguments have drawn to a close. In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration.

*Wilton v. Seven Falls Co.*, 515 U.S. 277, 288, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995). In an action such as this, where a lawsuit "involving the same parties and presenting opportunity for ventilation of the same state law issues is pending in state court, a district court might be indulging in '[g]ratuitous interference,' ... if it permitted the federal declaratory action to proceed." *Id.* at 283. The declaratory judgment remedy "should not be used 'to try a controversy by piecemeal, or to try particular issues without settling the entire controversy, or to interfere with an action which has already been instituted.'" *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256–57 (4th Cir.1996) (quoting *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir.1937)).

### B. The Fourth Circuit Framework

Consistent with *Wilton*, our Court of Appeals has established a framework to guide district courts in their decision whether to retain jurisdiction. First, a district court must consider the *Quarles* criteria of whether the federal action

(i) "'will serve a useful purpose in clarifying and settling the legal relations in issue,'" and (ii) "'will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'"

*Gatewood Lumber, Inc. v. Travelers Indemnity Co.*, 898 F.Supp. 364, 367 (S.D.W.Va. 1995) (Haden, C.J.) (quoting *Continental Cas. Co. v. Fuscardo*, 35 F.3d 963, 965 (4th Cir.1994)) (citations omitted). If the first set of criteria are met, the district court next considers the criteria enumerated in *Nautilus Insurance Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 377 (4th Cir.1994). This four-factor test is stated as:

1) the strength of the state's interest in having the issues raised in the federal declaratory action decided in state court;

2) whether the issues raised in the federal action can be more efficiently resolved in the pending state action; 3) whether the federal action would result in unnecessary entanglement between the federal and state systems due to overlapping issues of fact or law; 4) whether the federal action is being used merely as a device for "procedural fencing," i.e., to provide another forum in a race for res judicata.

*Id.* Particularly in cases in which an insurer seeks declaratory judgment on coverage issues, our Court of Appeals has stated the court's discretion must be guided not only by the *Quarles* criteria but also "by the same considerations of federalism, efficiency, and comity that traditionally inform a federal court's discretionary decision whether to abstain from exercising jurisdiction over state law claims in the face of parallel litigation in the state courts." *Nautilus,* 15 F.3d at 376.

## C. Analysis

Declaratory relief would clearly satisfy the *Quarles* criteria of clarifying and settling the legal relations at issue and affording relief from the uncertainty giving rise to the proceedings.

The first *Nautilus* factor is the strength of the state's interest in having the issues determined by the state court. Plaintiff does not deny the issues before the Court are to be determined under West Virginia law, but argues that the case requires merely "the routine application of settled principles of law to particular disputed facts." *Id.* at 378. Conversely, Defendants argue there are no West Virginia decisions on the substantive issue. Defendants fail to substantiate their stated conclusion; they do not, for example, explain why the cases cited by Plaintiff as settled case law are inapplicable to the instant case. Simply because there may be no West Virginia case with parallel facts does not mean the state law questions are "difficult, complex, or unsettled," *id.* Because Defendants have failed to demonstrate the state law questions are "difficult, complex or unsettled," the Court concludes West Virginia has no "compelling" interest in retaining jurisdiction. *See id.*

The second *Nautilus* factor is whether the issues can be resolved more efficiently in the pending state court action. A court should consider "whether its resolution of the declaratory action will settle all aspects of the legal controversy." *State Farm Fire & Cas. Co. v. Kirby,* 919 F.Supp. 939, 944 (N.D.W.Va.1996). Specifically, a court may examine "whether the claims of all parties in interest [in the federal forum] can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, [and] whether such parties are amenable to process in that proceeding." *American Nat'l Prop. & Cas. Co. v. Weese,* 863 F.Supp. 297, 301 (S.D.W.Va.1994) (Haden, C.J.).

Resolution of the federal declaratory action will not resolve all aspects of the legal controversy. The state action alleges Gino DiGiorgi's negligence and Allstate's liability for unfair claims settlement practices, claims that will not be resolved in the federal action. Conversely, the claims raised in the federal action are included for resolution in the state action, and Allstate has been joined as a party. Accordingly, this factor argues against retaining jurisdiction.

The third *Nautilus* factor is whether the federal action might result in unnecessary entanglement, or conflict, between the federal and state courts because of overlapping issues of fact or law. Both the state and federal actions arise from the same set of facts. Also, the state action contains all the issues of the federal action as well as other state law issues. Moreover, the central issue in the federal action is whether any policy language excludes coverage for Danielle DiGiorgi—for instance, whether an exclusion precludes coverage because Danielle was an "insured person or a regular resident of the insured premises." *See* Pl.'s Mem. Resp. at 3. Evidence pertaining to this issue may be relevant to the issue of Gino DiGiorgi's negligence and could be barred by issue preclusion. Nevertheless, the chances of entanglement of legal principles or conflicts between the possible resolutions in the federal and state courts are minimal because the state law appears to be settled.

The final *Nautilus* factor is whether the declaratory judgment action was filed as a

method of "procedural fencing," that is, forum shopping in a "race for res judicata or to achiev[e] a federal hearing in a case otherwise not removable." *Nautilus*, 15 F.3d at 371. Here, the federal action was filed before the state action. There is no evidence that Plaintiff filed this action as a method of procedural fencing. Indeed, it is not uncommon for insurers to file declaratory judgment actions to determine efficiently their duties under a policy, separate from any other claims alleged by the insured persons or tort victims. Accordingly, this factor argues in favor of retaining jurisdiction for early resolution in the court first obtaining jurisdiction. *See, e.g., Weese*, 863 F.Supp. at 297; *Kirby*, 919 F.Supp. at 939. Declaratory judgments are useful vehicles to "clarify[ ] and settl[e] the legal relations in issue" and "afford relief from the uncertainty ... giving rise to the proceeding." *Quarles*, 92 F.2d at 325 (quoting Edwin M. Borchard, *Declaratory Judgments* 107–09 (1934)).

After weighing the factors outlined above, the Court concludes this action is appropriately subject to its jurisdiction. Although the second and third *Nautilus* factors argue against retaining jurisdiction, they do not mandate such a result. Consequently, the Court should exercise its discretion in determining whether to retain jurisdiction. *Wilton*, 515 U.S. at 289 ("We believe it more consistent with the statute to vest district courts with discretion in the first instance, because facts bearing on the usefulness of the declaratory judgment remedy, and the fitness of the case for resolution, are peculiarly within their grasp."). The concerns of the *Nautilus* factors for federalism, efficiency and comity do not outweigh the *Quarles* factors which favor the exercise of federal jurisdiction in declaratory actions. Accordingly, the Court exercises its discretion to retain jurisdiction over the case and **DENIES** Defendants' motion to dismiss.