**FIRST FINANCIAL INSURANCE COMPANY, Plaintiff,**

v.

**CROSSROADS LOUNGE, INC.,**
**a corporation and Monroe Scarbro, Defendants.**

**CIV. A. No. 5:00–1172.**

United States District Court,
S.D. West Virginia,
Beckley Division.

May 21, 2001.

## ORDER

CHAMBERS, District Judge.

Pending before the Court is Defendant Monroe Scarbro's February 1, 2001 supplemented motion to dismiss. For the reasons discussed below, Defendant's motion is **DENIED WITHOUT PREJUDICE.**

### I. Statement of the Case

This case presents but a slight twist on an old, but common, theme: "An insurer, anticipating a coercive suit, sought a decla-

ration in federal court of nonliability on an insurance policy." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995) (describing district court case both in *Wilton* and in *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942)). Like the district courts in *Wilton* and *Brillhart,* this Court has discretionary authority to entertain Plaintiff's declaratory judgment action. The issue here is whether, in light of Supreme Court and Fourth Circuit precedence, the Court should decline to exercise that authority.

In August 2000, Defendant Monroe Scarbro filed a complaint in the Circuit Court of Raleigh County, West Virginia. As amended, that complaint alleges that in December 1999, Scarbro was brutally beaten at the hands of certain patrons and employees of a bar owned by Defendant Crossroads Lounge, Inc. (Crossroads). *See Scarbro v. Crossroads Lounge, Inc.,* No. 00–C–761–B (Raleigh County, W. Va. Aug. 16, 2000). Defendant Crossroads is insured under a commercial general liability insurance policy issued by Plaintiff. Plaintiff claims that certain clauses of that policy (an assault and battery exclusion and a liquor liability exclusion) exclude coverage for any damage that might have been suffered by Defendant Scarbro. Pursuant to the federal Declaratory Judgment Act (DJA), *see* 28 U.S.C. § 2201, Plaintiff filed the instant case on December 12, 2000, requesting that this Court declare that Plaintiff has neither a duty to defend Defendant Crossroads in the Raleigh County case nor a duty to pay any damages that might be awarded in the Raleigh County case to Defendant Scarbro against Defendant Crossroads. *See also* FED. R. CIV. P. 57 (providing in pertinent part that "[t]he procedure for obtaining a declaratory judgment pursuant to ... § 2201[ ] shall be in accordance with these rules ...."). Defendant Scarbro moves this Court to exercise its discretion and to dismiss this case in favor of resolution of the issues in the state court.

The parties do not dispute that Plaintiff, from North Carolina, and Defendants, from West Virginia, are of completely diverse citizenship, or that the amount in controversy exceeds the statutory threshold, currently $75,000. *See* 28 U.S.C. § 1332(a)(1). Diversity jurisdiction over this action is thus proper under § 1332.

## II. The Declaratory Judgment Act

### A. The Qualified Duty of Federal Courts to Exercise Their Jurisdiction

The Supreme Court has "often acknowledged that federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996) citing *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 821, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) ("[F]ederal courts have a 'virtually unflagging obligation ... to exercise the jurisdiction given them' "). As the *Quackenbush* court also recognized, "[t]his duty is not, however, absolute." 517 U.S. at 716, 116 S.Ct. 1712 (citing *Canada Malting Co. v. Paterson S.S., Ltd.,* 285 U.S. 413, 422, 52 S.Ct. 413, 76 L.Ed. 837 (1932) ("the proposition that a court having jurisdiction must exercise it, is not universally true")). The Supreme Court has allowed, and in some exceptional circumstances required, federal courts to abstain from hearing cases otherwise properly before them where, for example, federal intervention would upset the carefully crafted balance between state and federal sovereignties. *See, e.g., Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) (holding that federal courts should refrain from hearing cases that would interfere with pending state criminal proceedings); *Rail-*

*road Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941) (holding that federal courts should refrain from resolving federal constitutional questions before state court has been afforded opportunity to interpret ambiguous state law and thereby avoid constitutional difficulty); *Colorado River, supra* (holding that federal courts should avoid cases duplicative of state proceedings); *Burford v. Sun Oil Co.*, 319 U.S. 315, 334, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943) ("Conflicts in the interpretation of state law, dangerous to the success of state policies, are almost certain to result from the intervention of the lower federal courts.").

■ The DJA gives rise to one such extraordinary circumstance. The Act provides that federal courts *"may* declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C.A. § 2201 (emphasis added).[1] Thus, the authority of federal courts to entertain declaratory judgments, equitable in nature, is discretionary. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 282, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995); *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942); *Quackenbush*, 517 U.S. at 721, 116 S.Ct. 1712 ("federal courts not only have the power to stay the action based upon abstention principles, but can also, in otherwise appropriate circumstances, decline to exercise jurisdiction altogether by either dismissing the suit or remanding it to state court." (citing *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293, 297, 63 S.Ct. 1070, 87 L.Ed. 1407 (1943))); *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 257 (4th Cir.1996) ("Consistent with the nonobliga-

tory nature of the remedy, a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close. In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." (quoting *Wilton*, 515 U.S. at 288, 115 S.Ct. 2137) (internal block quotation reformatted)); *Mitcheson v. Harris*, 955 F.2d 235, 237 (4th Cir.1992); *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 324 (4th Cir. 1937).

■ Federal courts are therefore afforded " 'great latitude in determining whether to assert jurisdiction' " over such cases. *United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 493 (4th Cir.1998) (quoting *Aetna Cas. & Sur. Co. v. Ind–Com Elec. Co.*, 139 F.3d 419, 422 (4th Cir.1998)); *see Wilton*, 515 U.S. at 286–88, 115 S.Ct. 2137 (observing that DJA's "textual commitment to discretion, and the breadth of leeway we have always understood it to suggest, distinguish the declaratory judgment context from other areas of the law in which concepts of discretion surface" and calling DJA "remedial arrow in the district court's quiver [creating] an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants" (citing E. BORCHARD, DECLARATORY JUDGMENTS 312–314 (2d ed.1941); Borchard, *Discretion to Refuse Jurisdiction of Actions for Declaratory Judgments*, 26 MINN. L. REV. 677 (1942); O. FISS & D. RENDLEMAN, INJUNCTIONS 106–108 (2d ed.1984))).

1. The DJA provides in pertinent part:
   In a case of actual controversy within its jurisdiction ..., any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seek-

ing such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.
28 U.S.C. § 2201(a).

## B. Fourth Circuit Framework

■ This qualification (represented by a district court's discretion to abstain from hearing a declaratory judgment) to the ordinary rule (that a district court has a duty to exercise jurisdiction conveyed) is itself circumscribed, if but loosely. Thus, for example, "a district court may not refuse to entertain a declaratory judgment action out of 'whim or personal disinclination,' [*Public Affairs Assoc., Inc. v. Rickover*, 369 U.S. 111, 112, 82 S.Ct. 580, 7 L.Ed.2d 604 (1962)], but may do so only for 'good reason.' [*Quarles*, 92 F.2d at 324]." *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 375 (4th Cir. 1994); *cf. Allstate Ins. Co. v. DiGiorgi*, 991 F.Supp. 767, 768 (S.D.W.Va.1998) (Haden, C.J.) (noting that Fourth Circuit framework is "[c]onsistent with *Wilton*"); *but cf. Poston*, 88 F.3d at 257–58 ("To whatever extent our previous decisions have implied further constraints on district court discretion, *see, e.g., Nautilus*, 15 F.3d at 375, those decisions must give way to the clear teachings of *Wilton*.").[2]

■ In the Fourth Circuit, "district courts are not without guidance in exercis-ing this discretion." *Kapiloff*, 155 F.3d at 493. First, in *Quarles, supra*, the court of appeals noted that a declaratory judgment should not be used "to try a controversy by piecemeal, or to try particular issues without settling the entire controversy, or to interfere with an action which has already been instituted." *Quarles*, 92 F.2d at 325. To that end, the *Quarles* court held that a district court should normally entertain a declaratory judgment action otherwise within its jurisdiction "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Id.* (quoting BORCHARD, *supra*, at 107–09). These factors also further ensure that the parties meet the Constitution's "case or controversy" requirement.[3] *See* U.S. CONST., art. III, § 2.

Second, in *Mitcheson*, the court considered a case where an insurer sought declaratory judgment while[4] underlying litigation against the insured was pending in a state court. The *Mitcheson* court added to the *Quarles* factors the considerations

---

2. Chief Judge Haden has expressed some doubt over whether:

post *Wilton*, a district court in this circuit is now required to consider the *Quarles/Nautilus* framework [discussed, *infra*] in its decisions to stay or dismiss declaratory judgment actions. Although the *Nautilus* factors continue to provide a useful guideline for a district court to use in deciding whether to entertain a declaratory judgment action, to the extent that they are viewed as a set of rigid governors of a district court's discretion, they may no longer be strictly binding.

*Gatewood Lumber, Inc. v. Travelers Indem. Co.*, 898 F.Supp. 364, 368 (S.D.W.Va.1995) (footnote omitted). Until it is told to do otherwise, this Court, like the other district court opinions post-*Wilton*, continues to rely on the Fourth Circuit's framework, at least as a "useful guideline" in the exercise of its discretion under the DJA.

3. In *White v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 913 F.2d 165 (4th Cir.1990), the Fourth Circuit recognized "that a controversy existed between an insurer and a person injured by the insured even though the injured person had not yet obtained a judgment against the insured. The fact that there [i]s no formally adjudicated liability [i]s not dispositive." *Id.* at 168 (citing *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941)).

4. The Fourth Circuit has made clear that the order of filing the federal and state suit is not dispositive, but merely another ingredient in the mix: Even where "the federal action was filed first, we decline to place undue significance on the race to the courthouse door." *Poston*, 88 F.3d at 258.

of comity, efficiency, and federalism. 955 F.2d at 237–40. In such a case, the *Mitcheson* court suggested that a district court should consider:

> (i) the strength of the state's interest in having the issues raised in the federal declaratory judgment action decided in the state courts; (ii) whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending; and (iii) whether permitting the federal action to go forward would result in unnecessary "entanglement" between the federal and state court systems, because of the presence of "overlapping issues of fact or law."

*Nautilus*, 15 F.3d at 377 (internal citations omitted); *Brillhart*, 316 U.S. at 495, 62 S.Ct. 1173 ("Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided."). A fourth factor added "into the discretionary balance," *Continental Cas. Co. v. Fuscardo*, 35 F.3d 963, 966 (4th Cir.1994), by the *Nautilus* court was "whether the declaratory judgment action is being used merely as a device for 'procedural fencing'—that is, 'to provide another forum in a race for *res judicata*' or 'to achiev[e] a federal hearing in a case otherwise not removable.'" *Nautilus*, 15 F.3d at 377 (quoting 6A J. MOORE, B. WARD & J. LUCAS, MOORE'S FEDERAL PRACTICE, ¶ 57.08[5] (2d ed.1993) (citing *Kerotest Mfg. Co. v. C–O Two Fire Equip. Co.*, 342 U.S. 180, 72 S.Ct. 219, 96 L.Ed. 200 (1952))) (alteration in original); *see also Kapiloff*, 155 F.3d at 493–94.

### III. Analysis

■ Plaintiff's declaratory complaint presents two issues: (1) applicability of the insurance policy's assault and battery exclusion, and (2) applicability of the policy's liquor liability exclusion. If this Court eventually determines, on the merits, that the policy's assault and battery exclusion applies, then Plaintiff will have neither a duty to defend nor, necessarily, a duty to indemnify. If, however, this Court eventually determines, on the merits, that the policy's assault and battery exclusion does *not* apply, then an examination of the propriety of applying the liquor liability exclusion will become necessary. Because the Court concludes that application of the *Quarles* and *Nautilus* factors to the first issue counsels exercising jurisdiction, *see infra*, while application of those factors to the second issue might counsel abstention,[5] the Court will exercise its discretion and retain jurisdiction of this case at least long enough to determine the applicability of the assault and battery exclusion.

### A. Applying Aetna Casualty & Surety Co. v. Quarles

■ In *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 324 (4th Cir.1937), the Fourth Circuit expressed a preference not "to try a controversy by piecemeal, or to try particular issues without settling the entire controversy, or to interfere with an action which has already been instituted." *Quarles*, 92 F.2d at 325. As is common in apparently simple legal propositions, much of the complexity of this command is hidden within the uncertain meaning of its individual words: The difficulty here lies in defining "controversy." If "controversy" means simply the insurance coverage questions, as framed by the declaratory judgment complaint, then settling those issues in federal, rather than state, court will not result in a piecemeal determination of "the controversy." If, however, "controversy" is read to encompass not only the defense and coverage issues, but

---

5. To be clear, this Order does not reach the propriety of dismissal of the second declaratory judgment issue, and denies Defendant's motion to dismiss without prejudice.

also the underlying tort claim, or, more generally, all of the issues that arise from the common nucleus of operative facts, then this case in its current form cannot settle "the entire controversy."[6]

■ Controversies do not arise in a vacuum; they arise between parties. *See Brillhart,* 316 U.S. 491, 495, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942) ("Where a district court is presented with a claim such as was made here, it should ascertain whether the questions **in controversy between the parties to the federal suit,** and which are not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in the state court." (emphasis added)). Therefore, this Court adopts a flexible, case-by-case, and party-oriented definition of controversy—a definition which *might not necessarily* sweep in every question that arises from the common nucleus of operative facts present in any related state cases. For example, where the controversy between the declaratory plaintiff and declaratory defendant encompasses questions that will not be settled by the federal declaratory judgment action, *Quarles* might counsel abstention.[7] But where, as here, the questions presented by the declaratory judgment complaint circumscribe the en-

tire controversy between the declaratory plaintiff and the declaratory defendants, *Quarles* will normally resolve in favor of retention of the federal action. This case-by-case approach best serves *Quarles's* goals of "clarifying and settling the *legal relations in issue,* and terminat[ing] and afford[ing] relief from the uncertainty, insecurity, and *controversy giving rise to the proceeding." Quarles,* 92 F.2d at 325 (emphasis added).

In *United Capitol Ins. Co. v. Kapiloff,* 155 F.3d 488 (4th Cir.1998), for example, where an insurer sought declaration of its obligations under an insurance policy, the declaratory judgment passed muster under *Quarles:*

> Applying [the *Quarles* ] guidelines to the case before us, a declaratory judgment action would undoubtedly "serve a useful purpose" in settling the disputed rights of [the insurer] and the [insureds] under the insurance policy, and a declaratory judgment would "afford relief" from the uncertainty of whether coverage exists under the policy. It is well established that a declaration of parties' rights under an insurance policy is an appropriate use of the declaratory judgment mechanism. The declaratory judgment action

---

**6.** As explained more fully *infra,* a court's view of the scope of the controversy in large part dictates that court's abstention analysis.

**7.** Common examples of this kind of case might include those wherein the insurance carrier, in federal court as the declaratory plaintiff on the coverage or defense issue, has also been named as the defendant in a bad faith or unfair claim settlement case in the underlying state case, or where the insured has made allegations of misrepresentation of the policy or of negligent failure to procure the requested insurance against the insurer. In those cases, the controversy as between the declaratory judgment plaintiff and defendant encompasses more than just the declaratory judgment issues and might not be settled by the federal action. *See, e.g., Centennial Life*

*Ins. Co. v. Poston,* 88 F.3d 255, 258 (4th Cir.1996) (abstention proper in part because of "particularly salient" factor that insured asserted claims against insurance agent for misrepresentation and negligent failure to procure). *But cf. State Farm Fire & Cas. Co. v. Kirby,* 919 F.Supp. 939, 942 (N.D.W.Va. 1996) (finding that, even in case where insurer was defendant in related state case for unfair trade practice, "[t]here is no doubt that a declaration on the coverage issue will serve a useful purpose in clarifying and settling the legal relation between the Kirbys and State Farm. Nor can it be disputed that such a declaration would abate the controversy over whether the Kirbys' loss is covered under the terms of their homeowners' insurance policy.").

is designed to allay exactly the sort of uncertainty that flows from the threat that ambiguous contractual rights may be asserted. The declaratory judgment action allows the uncertain party to gain relief from the insecurity caused by a potential suit waiting in the wings. Thus, the district court acted reasonably in recognizing in this case the value of declaring the parties' rights.

*Kapiloff,* 155 F.3d at 494. *See, e.g., Gatewood Lumber, Inc. v. Travelers Indem. Co.,* 898 F.Supp. 364, 367 (S.D.W.Va.1995) (Haden, C.J.) ("declaratory relief sought in the instant action likely would achieve the ends of clarifying and settling the legal relations at issue and would afford relief from the uncertainty giving rise to the proceedings, as set out in *Quarles* "); *cf. Cardinal Cas. Co. v. S.E.C.U.R.E.,* 842 F.Supp. 899 (S.D.W.Va.1994) (in declaratory judgment action to decide indemnification duty as between several insurers, abstention appropriate where unsettled questions of state law would likely create piecemeal litigation); *Mitcheson v. Harris,* 955 F.2d 235, 239 (4th Cir.1992) ("It hardly husbands scarce judicial resources to allow separate suits stemming from the same overall controversy *and involving overlapping issues* to proceed simultaneously on parallel tracks." (emphasis added)).

Here, the "controversy" between Plaintiff and Defendants, *i.e.,* Plaintiff's alleged duties to defend and to indemnify as limited, *supra,* will not be tried "piecemeal" without "settling the entire controversy" between Plaintiff and Defendants if those issues are decided in this forum before the tort liability issues are resolved separately in state court. In fact, deciding them here before the state case will be more helpful than harmful. *See, e.g., Stout v. Grain Dealers Mut. Ins. Co.,* 307 F.2d 521, 524 (4th Cir.1962) ("The only just and expedient solution to a dilemma in which parties to a contract of insurance are caught when

a conflict of interest arises between them is to have the issue of coverage decided in an independent suit, not complicated by the presence of the claimant. Therefore, the present suit serves the dual purpose of determining with finality the company's obligation to defend and its ultimate liability for any judgment rendered against the insured. This was a perfect case for declaratory judgment." (paragraph break omitted)).

Accordingly, this Court recognizes the value of declaring the parties' rights and FINDS that retaining jurisdiction over this case would be consistent with the guidelines set out in *Quarles.*

### B. Applying *Nautilus Insurance Co. v. Winchester Homes, Inc.*

Before applying the test from *Nautilus Ins. Co. v. Winchester Homes, Inc.,* 15 F.3d 371 (4th Cir.1994), the Court understands that, as that case exists now, Plaintiff is not a party to the pending litigation in state court. Nor will that state case necessarily resolve the narrow controversy presented by Plaintiff's declaratory judgment complaint, namely, Plaintiff's alleged duties to defend and indemnify Defendant Crossroads. (Pl.'s Reply Memo. at 5–6 ("First Financial is *not* a party to the state court action[,] and attempts to make it a party would result in the removal of the separate claim involving First Financial. The fact that the issues raised herein might be resolved in some yet to be filed action in state court[ ] is not sufficient for dismissal of this action.").) This Court nonetheless finds that "[t]he existence of th[e] state action ... animates the issues of federalism and comity and counsels careful examination of the factors identified in *Nautilus." Kapiloff,* 155 F.3d at 494. *See also Ind–Com Elec. Co.,* 139 F.3d 419 (4th Cir.1998) (affirming dismissal un-

der *Nautilus* where no related state case existed).

### 1. West Virginia's Interest

Absent indication to the contrary, West Virginia law would govern interpretation of the insurance policy at issue in this declaratory judgment action, where jurisdiction is based on diversity of citizenship. *See Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941) (holding that *Erie* prohibition "against such independent determinations by the federal courts extends to the field of conflict of laws" and that "conflict of laws rules to be applied by the federal court in [a state] must conform to those prevailing in [that] state['s] courts"); *Johnson v. Neal,* 187 W.Va. 239, 418 S.E.2d 349 (1992) (in contract case, *lex loci contractus* applies absent "compelling reason" to deviate from it).

■ The *Mitcheson* court explained the state's interest in such a case:

> The first concern supporting dismissal of the declaratory action is the state's interest in deciding questions of state law—an interest that not surprisingly has its jurisprudential roots in *Erie* .... As was well established by *Erie* and its progeny, state law ordinarily provides the rule of decision in pure diversity cases. There exists an interest in having the most authoritative voice speak on the meaning of applicable law, and that voice belongs to the state courts when state law controls the resolution of the case.

*Mitcheson,* 955 F.2d at 237; *id.* at 238 "Absent a strong countervailing federal interest, the federal court ... should not elbow its way into this controversy to render what may be an 'uncertain and ephemeral' interpretation of state law." (quoting *Pennhurst State Sch. & Hosp. v. Halder-*

*man,* 465 U.S. 89, 122 n. 32, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984)). *See also Continental Cas. Co. v. Fuscardo,* 35 F.3d 963, 967 (4th Cir.1994). States have a related interest in affording plaintiffs their choice of forum and timing. *See, e.g., State Farm Fire & Cas. Co. v. Taylor,* 118 F.R.D. 426, 429–30 (M.D.N.C.1988) ("Additionally, and most importantly to the case at bar, '[t]he anticipation of defenses is not ordinarily a proper use of the declaratory judgment procedure. It deprives the plaintiff of his traditional choice of forum and timing, and it provokes a disorderly race to the courthouse.' *Hanes Corp. v. Millard,* 531 F.2d 585, 592–93 (D.C.Cir.1976). A district court may properly consider the inequity of permitting a declaratory plaintiff to gain precedence in time and forum by filing a declaratory action which is *merely anticipatory* of a parallel state action." (alteration in original) (footnote omitted) (citing *Mission Ins. Co. v. Puritan Fashions Corp.,* 706 F.2d 599, 602 & n. 3 (5th Cir. 1983) (anticipatory suits are disfavored; affirming dismissal of declaratory action))). Furthermore, the state's interest is stronger in questions of insurance law. *See, e.g., SEC v. National Sec., Inc.,* 393 U.S. 453, 459, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969) (quoting McCarran–Ferguson Act, 59 Stat. 33 (1945), *as codified at* 15 U.S.C. § 1011 ("Congress hereby declares that the continued regulation and taxation by the several States of the business of insurance is in the public interest, and that silence on the part of the Congress shall not be construed to impose any barrier to the regulation or taxation of such business by the several States.")).

■ The state's interest is balanced, however, by an out-of-state party's interest in a federal forum:

> Obviously, the interest in having the law of a given sovereign determined by the courts of that sovereign is not abso-

lute; there are countless examples of federal courts interpreting state law and vice versa. In conferring federal jurisdiction under Article III, Congress can plainly supersede the state interest in having state courts interpret state law. In the ordinary diversity case, for example, there are paramount federal interests in having federal courts resolve questions of state law and accord protection to out-of-state parties. In declaratory actions, however, Congress has diminished the strength of these interests by making the exercise of such diversity jurisdiction discretionary with the court. *Mitcheson,* 955 F.2d at 237.

Reconciling these competing interests, the Fourth Circuit has consistently followed the rule that the state's interest, while important, is diminished if the state-law issues are not novel, unsettled, difficult, complex, or otherwise problematic. *See Nautilus,* 15 F.3d at 378 ("We think such a requirement that the state law issues be 'difficult' or 'unsettled' is implicit in *Mitcheson,* which emphasized repeatedly that the particular state-law questions raised were 'close,' 'difficult,' and 'problematic,' *see* 955 F.2d at 236, 240 ...."); *Kapiloff,* 155 F.3d at 494 ("[T]he interests of Maryland in deciding this case were not particularly significant. Although the case is entirely one of state law, the issues involved are standard ones of agency and contract interpretation. A federal court would be unlikely to break new ground or be faced with novel issues of state interest."); *Astorg Motor Co. v. Westfield Ins. Co.,* 866 F.Supp. 964, 967 (S.D.W.Va.1994) (Haden, C.J.) ("Neither party has argued that the West Virginia law to be applied in this case is close, complex, or problematic. Instead, this case apparently presents a controversy where ... 'the questions of state law involve the application of relatively settled principles of law to particular disputed facts.' *Fuscardo,* 35 F.3d at 967. As such, the state has no compelling inter-

est in retaining jurisdiction over this action."); *Myles Lumber Co. v. CNA Fin. Corp.,* 233 F.3d 821, 824 (4th Cir.2000) ("Comity concerns do not weigh heavily in favor of the exercise of jurisdiction. Although this case will involve the application of state law, there is nothing that would give West Virginia courts a particularly strong interest in deciding it. *See* [*Poston,* 88 F.3d] at 258 (noting that interest of state in deciding matter of state law is lessened when state law issue is not problematic or difficult) ....").

In the instant case, Defendant Scarbro claims that the applicable law "is unsettled and the facts, uncertain." (Def.'s Amended Mot. to Dismiss at 3–4.) Defendant Scarbro further claims:

> The law surrounding the claimed exclusion reveals no reported decision on point, in State or Federal court. As a result, the question is one of first impression in this jurisdiction .... This is a matter of great controversy that shall require a close examination of both local and foreign law for its resolution .... The state has a significant interest in its citizens [*sic*] welfare and, likewise, in determining the validity of the [policy] exclusions ....

(*Id.* at 4–5 citing Annotation, *Validity, Construction, And Effect of Assault And Battery Exclusion in Liability Insurance Policy at Issue,* 44 A.L.R. 5TH 91 (1996).) For its part, Plaintiff claims that "[t]he questions of law involved in this declaratory judgement [*sic*] action involve the application of relatively settled principles of law. It is merely a question of what insurance the contract provides." Pl.'s Reply Memo at 3. While Plaintiff concedes "that there are no reported decisions on th[e] exclusionary language" (*id.* at 5) involved, Plaintiff asserts that West Virginia courts "have had *no* difficulty in applying these exclusions" (*id.* (citing *Kelly v. Painter,*

202 W.Va. 344, 504 S.E.2d 171 (1998) (*per curiam*) (applying liquor liability exclusion))).

While the West Virginia Supreme Court of Appeals might not have ruled on the meaning and applicability of the precise policy language at issue in the assault and battery exclusion, this Court finds that West Virginia's Supreme Court and the courts of her sister states have provided sufficient guidance in the broader areas of contract interpretation and of the applicability of insurance policy exclusions generally, including whether those exclusions comport with public policy.[8] Accordingly, the Court **FINDS** that application of the assault and battery exclusion involves legal questions that are neither novel, unsettled, difficult, complex, nor otherwise problematic, and that the first *Nautilus* factor is neutral, favoring neither exercise nor abstention of the Court's jurisdiction.

### 2. *Efficiency*

The *Nautilus* court described the inquiry a district court should use to weigh the relative efficiencies of deciding the action in federal or state court:

> [T]he Supreme Court has directed us to focus primarily on "whether the questions in controversy between the parties to the federal suit ... can ***better be*** settled in the proceeding[s]" that are

already "pending in the state court[s]." *Brillhart*, 316 U.S. at 495, 62 S.Ct. 1173. This in turn requires careful inquiry into "the scope of the pending state court proceeding[s]," including such matters as "whether the claims of all parties in interest [to the federal proceeding] can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, [and] whether such parties are amenable to process in that proceeding." *Id.*

15 F.3d at 378–79 (emphasis and first alteration added) (parallel citation omitted) (remaining alterations in original). Balancing those efficiencies necessarily involves many of the same considerations as the *Quarles* factors, discussed *supra*, and the Court will not repeat that analysis.

Defendant Scarbro argues that a declaration of coverage could be "wasted Judiciary effort[ ]" (Def. Scarbro's Am. Br. in Supp. of Mot. to Dismiss at 5) if the state case finds non-liability on behalf of Defendant Crossroads. *Cf. Mitcheson*, 955 F.2d at 239 (noting inefficiency where, "if a federal court were to render a declaration that the insurer had no duty to defend, the ongoing state litigation could be delayed considerably due to time consuming substitution of counsel. Similarly, a federal declaration that an insurer had no duty to indemnify could be rendered totally unnec-

---

8. West Virginia courts have supplied clear rules for interpreting contracts. *See, e.g.,* syl. pts. 1–3, *Kelly v. Painter*, 202 W.Va. 344, 504 S.E.2d 171 (1998); syl. pts. 1–2, *Miller v. Lemon*, 194 W.Va. 129, 459 S.E.2d 406 (1995); *Transamerica Ins. Co. v. Arbogast*, 662 F.Supp. 164 (N.D.W.Va.1987); syl. pts. 1–2, *Shamblin v. Nationwide Mut. Ins. Co.*, 175 W.Va. 337, 332 S.E.2d 639 (1985); syl. pt. 1, *Keiper v. State Farm Mut. Auto. Ins. Co.*, 189 W.Va. 179, 429 S.E.2d 66 (1993); syl. pt. 2, *Smith v. Sears, Roebuck & Co.*, 191 W.Va. 563, 447 S.E.2d 255 (1994). The West Virginia Supreme Court of Appeals has also made clear the "public policy behind public policy." *See, e.g.,* syl. pt. 1, *Cordle v. General Hugh Mercer Corp.*, 174 W.Va. 321, 325 S.E.2d 111 (1984); syl. pt. 1, *Page v. Columbia Natural Res., Inc.*, 198 W.Va. 378, 480 S.E.2d 817 (1996); *Morris v. Consolidation Coal Co.*, 191 W.Va. 426, 446 S.E.2d 648, 655 n. 5 (1994). West Virginia looks to her sister states for assistance resolving legal and policy questions. *See, e.g,* *Hamric v. Doe*, 201 W.Va. 615, 499 S.E.2d 619 (1997) (looking to Ohio courts); *Rich v. Allstate Ins. Co.*, 191 W.Va. 308, 445 S.E.2d 249 (1994) (same, looking to California, Washington, and Pennsylvania); *Cordle, supra* (looking to New Jersey courts for very procedure to determine public policy).

essary by a subsequent state verdict for the insured in the underlying state action." (citing *Indemnity Ins. Co. v. Schriefer*, 142 F.2d 851, 853 (4th Cir.1944) (approving dismissal of declaratory action because duty to indemnify could be decided as well after the state court litigation))).

The Court disagrees, especially in light of the Court's decision to limit this Order to the assault and battery exclusion. The extent of Plaintiff's duty to defend should still be resolved in some forum before the tort case proceeds. As noted, Plaintiff is not a party to the state case, and the issues necessary to resolution of the assault and battery exclusion are not before the state court. *Cf. Nautilus*, 15 F.3d at 379 ("That the issues raised here might be resolved in some yet-to be filed action brought in state court—either another action for declaratory relief or an action for indemnity after entry of judgment against Reliance in the underlying tort suits—is not alone sufficient to justify dismissal of this action."). *See, e.g., Astorg Motor Co.*, 866 F.Supp. at 967–68 (in part because dispute between insurer and insured differs from that between tortfeasor and victim, " 'it cannot be said the issues raised in the declaratory judgment action can be addressed in the state court more efficiently.' " (quoting *American Nat'l Prop. & Cas. Co. v. Weese*, 863 F.Supp. 297, 300 (S.D.W.Va.1994) (Haden, C.J.) (same)) (citing Fed. R. Civ. P. 57 ("The existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate.")))). Without deciding the issue now, the Court notes that it is likely that all persons necessary to the determination of the controversy between Plaintiff and the Defendants are already parties to this action. *See* Fed. R. Civ. P. 19.[9]

The Court **FINDS** that, as the two cases stand, this Court can more efficiently decide the threshold issue of Plaintiff's duties and that resolution of those duties presents "a perfect case for declaratory judgment." *See Stout*, 307 F.2d at 524. The Court acknowledges that different courts facing similar facts have come to different conclusions. *See, e.g., Gatewood Lumber*, 898 F.Supp. at 368 ("The second *Nautilus* factor is also satisfied in the instant action because the issues raised could be resolved more efficiently in the pending state court action. The West Virginia litigation was filed first and the state court is capable of entertaining a declaratory judgment action that will resolve the same issues this federal action would. Because all of the issues may be resolved in the state proceeding, there is no necessity to go forward with duplicative federal litigation contemporaneously."); *Beach Cove Assoc. v. U.S. Fire Ins. Co.*, 903 F.Supp. 959, 963 (D.S.C.1995) ("The state court is familiar with the controversies underlying this action. It would be wasteful to have this case proceed on a parallel track with the state cases. If there is a verdict for Plaintiff in those cases the coverage issue will be moot.... Efficiency dictates that resolution of issues stemming from one controversy should be resolved by one court."). In this case, the meaning and application of the insurance policy is the only issue here, not the factual and legal issues presented in the tort case (which was filed just four months before this federal case). Because cover-

---

**9.** A person is "to be joined" if:

(1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a prac-

tical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed. R. Civ. P. 19(a).

age issues, and especially the duty to defend, should be resolved quickly, and because the insurer is not a party to the state case, the Court remains persuaded that resolution of the assault and battery exclusion issue can be more efficiently undertaken in this forum.

### 3. Overlapping Issues of Fact or Law and Unnecessary Entanglement

In the case at bar, as "[i]n many declaratory actions brought to resolve a duty to defend or indemnify an insured in a controversy already the subject of state court litigation, there will be overlapping issues of fact or law between the state and federal actions." *Mitcheson*, 955 F.2d at 239. In some of those cases, where "[t]he insured may well be collaterally estopped from relitigating the overlapping issues decided in the federal action," *id.*, "[s]uch issue preclusion will likely 'frustrate the orderly progress' of state court proceedings by leaving the state court with some parts of a case foreclosed from further examination but still other parts in need of full scale resolution," *id.* (quoting *Phoenix Ins. Co. v. Harby Marina, Inc.*, 294 F.Supp. 663, 664 (N.D.Fla.1969)). "Additionally, the state court will likely have to consult federal law to ascertain the preclusive principles at work, *see Harnett v. Billman*, 800 F.2d 1308, 1312–13 (4th Cir. 1986), thereby creating further entanglement." *Id.* at 240.

Like *Nautilus*, however, and "[u]nlike *Mitcheson*, this is not a case where many of the issues of law and fact sought to be adjudicated in the federal declaratory action are already being litigated by the same parties in the related state court action." *Nautilus*, 15 F.3d at 379. *See, e.g., Fuscardo*, 35 F.3d at 968 ("Regarding the third *Nautilus* factor, the federal court's resolution of the issues on the instant case would not have resulted in unnecessary entanglement of the state and federal court systems. The personal inju-

ry tort issues that would be litigated between [the tortfeasor] and [the victim] in state court are discrete from those issues involving insurance coverage which [the insurer] sought to have adjudicated in the federal court."); *Allstate Ins. Co. v. DiGiorgi*, 991 F.Supp. 767, 769 (S.D.W.Va. 1998) (Haden, C.J.) (finding that even where "state and federal actions arise from the same set of facts" and "state action contains all the issues of the federal action as well as other state law issues" and evidence pertaining to "central issue in the federal action ... may be relevant to the issue of Gino DiGiorgi's negligence and could be barred by issue preclusion[, n]evertheless, the chances of entanglement of legal principles or conflicts between the possible resolutions in the federal and state courts are minimal because the state law appears to be settled."); *Vermont Mut. Ins. Co. v. Everette*, 875 F.Supp. 1181, 1186 (E.D.Va.1995) ("Fourth, no overlapping issues of fact or law exist between this action and the underlying state action between [the tortfeasor and the victim]; the state court action involves alleged torts ..., while determination of this action involves [the insurer's] and the [insured tortfeasors'] obligations under the homeowner's insurance policy."); *cf. Fuscardo*, 35 F.3d at 968 (holding that where same declaratory judgment issue between insurer and claimant in both state and federal cases, abstention was proper); *Kapiloff*, 155 F.3d at 494 ("since both actions raised the same core issues of law and fact, and both actions aimed at determining the rights of the parties under the insurance policy, potential entanglement between the state and federal courts was a genuine possibility").

▪ At least as to the threshold question of Plaintiff's duty to defend, resolution of the assault and battery exclusion merely requires examination of the complaint and

the policy. In West Virginia, "[a]s a general rule, an insurer's duty to defend is tested by whether the allegations in the plaintiff's complaint are reasonably susceptible of an interpretation that the claim may be covered by the terms of the insurance policy." *Aetna Cas. & Sur. Co. v. Pitrolo*, 176 W.Va. 190, 342 S.E.2d 156, 160 (1986). *See also* syl., *Farmers & Mechanics Mut. Fire Ins. Co. of West Virginia v. Hutzler*, 191 W.Va. 559, 447 S.E.2d 22 (1994) ("When a complaint is filed against an insured, an insurer must look beyond the bare allegations contained in the third party's pleadings and conduct a reasonable inquiry into the facts in order to ascertain whether the claims asserted may come within the scope of the coverage that the insurer is obligated to provide."); *State Auto. Mut. Ins. Co. v. Alpha Eng'g Servs., Inc.*, 208 W.Va. 713, 542 S.E.2d 876, 879 (2000) In other words, an insurer has a duty to defend an action against its insured only if the claim stated in the underlying complaint could, without amendment, impose liability for risks the policy covers (citing *Butts v. Royal Vendors, Inc.*, 202 W.Va. 448, 504 S.E.2d 911 (1998); *Bruceton Bank v. United States Fid. & Guar. Ins. Co.*, 199 W.Va. 548, 486 S.E.2d 19 (1997); *Silk v. Flat Top Constr., Inc.*, 192 W.Va. 522, 453 S.E.2d 356, 359 (1994)); *id.* only "[i]f the causes of action alleged in the plaintiff's complaint are entirely foreign to the risks covered by the insurance policy, then the insurance company is relieved of its duties under the policy" (citing *Silk*, 453 S.E.2d at 359; *Horace Mann Ins. Co. v. Leeber*, 180 W.Va. 375, 376 S.E.2d 581 (1988)). In this case, for example, the state complaint clearly alleges assault.

Furthermore, the absence of a pending state case on the coverage and defense issues now becomes relevant, for absent such a case, the likelihood of entanglement is even less. *See, e.g.*, *Myles Lumber Co.*, 233 F.3d at 825 ("We perceive no realistic threat of entanglement here primarily because there is no pending state court action. Although Myles Lumber contends that there is a danger of entanglement because the state court is already familiar with the facts of the underlying suit, this argument is specious. Whichever court decides the merits of this case must tread carefully with regard to the facts already decided in the underlying action ...."). The Court cannot, therefore, say that this factor counsels abstention.

### 4. *Procedural Fencing*

Finally, the Court must consider "whether the declaratory judgment action is being used merely as a device for 'procedural fencing'—that is, 'to provide another forum in a race for res judicata' or 'to achiev[e] a federal hearing in a case otherwise not removable.'" *Nautilus*, 15 F.3d at 377 (internal citation omitted) (alteration in original). Defendant notes that this action was filed after the state case and was "possibly done merely as a method of procedural fencing." (Def. Scarbro's Am. Br. in Supp. of Mot. to Dismiss at 5.) In its current form, the state case apparently consists entirely of non-removable state questions.

No simple rule emerges from an examination of relevant case law. Courts that separate the "controversy" of defense and coverage from the issues in the state action are usually satisfied that the insurer "filed [its] action to resolve questions that are traditionally resolved in declaratory judgment actions, and it did so under standard diversity jurisdiction." *Kapiloff*, 155 F.3d at 494. As Chief Judge Haden observed, "[i]ndeed, it is not uncommon for insurers to file declaratory judgment actions to determine efficiently their duties under a policy, separate from any other claims alleged by the insured persons or tort victims." *DiGiorgi*, 991 F.Supp. at 770. *See also Astorg Motor Co.*, 866

F.Supp. at 968 ("[I]n this action, different issues have been raised in state and federal court. Where 'a dispute [is] separate and independent from the ongoing litigation in the state courts, [it is] particularly appropriate for early resolution in a declaratory action.'" (quoting *Weese,* 863 F.Supp. at 301 (1st alteration added) (quoting *Nautilus,* 15 F.3d at 380))); *Weese,* 863 F.Supp. at 301–02 ("Simply put, this issue involves determination of an amount of coverage under Defendant's insurance policy. There is no factual or legal issue pending in the state court action that will be affected by the determination of declaratory relief. Therefore, the Court concludes Plaintiff has not filed this action for purposes of procedural fencing.").

On the other hand, courts that see the issue as one, overarching controversy are more likely to come to the opposite conclusion. In *Fuscardo,* for example, the court of appeals began by noting that "[t]he underlying tort action was already pending in state court when Continental Casualty filed in federal court." 35 F.3d at 968. The court observed that:

> [w]hile the issues regarding insurance coverage *per se* were not before the state court in the proceedings involving [the tortfeasor] and the [victims] when [the insurer] Continental Casualty filed an action in the district court, Continental Casualty already knew that the coverage issues were bound to arise during the course of those proceedings. Continental Casualty has attempted to have the coverage issue determined by the federal court before the issue arose in the context of the state proceedings.

*Id.* Even though the *Fuscardo* court recognized that "[u]nder *Nautilus,* a federal action of this kind may be filed 'in an entirely proper effort to obtain prompt resolution of a dispute over [an insurer's] obligation,'" *id.* (quoting *Nautilus,* 15 F.3d at 380), the court observed that "given the pendency of state proceedings and the inevitability of Continental Casualty's involvement in those proceedings, the state court was just as capable of promptly resolving the dispute over the insurance coverage question as the district court was," *id.* The court thereby concluded that such a "sequence of events, analyzed under the fourth *Nautilus* factor, indicates that the federal declaratory action *may have been used* as a form of procedural fencing, i.e., forum shopping." *Id.* (emphasis added).

As noted, separate declaratory judgments on coverage issues are "not uncommon" and "traditionally resolved" in cases like the one at bar. The sequence of events and the procedural posture of this case reveal simply that this federal DJA case was filed after the state case. Without more, the Court cannot conclude that Plaintiff has engaged in the kind of procedural fencing described in *Nautilus.* The Court therefore finds that this factor counsels neither for nor against abstention.

### IV. Conclusion

Because *Quarles* counsels in favor of exercising jurisdiction over the instant declaratory judgment action, within the limitations discussed, *supra,* and because none of the *Nautilus* factors counsel the contrary, the Court **DENIES WITHOUT PREJUDICE** Defendant Scarbro's motion to dismiss.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.